Commonwealth v. Barber.

COMMONWEALTH vs. EDWIN L. BARBER.

Suffolk. June 12, 1984. — August 7, 1984.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Self-Defense.*

At the trial of an indictment for assault and battery by means of a dangerous weapon, it was error requiring reversal for the judge, after being requested to do so, to refuse to instruct the jury on the question of self-defense, where the jury could have found that the defendant accepted the victim's invitation to engage in a fist-fight with him and that the defendant, on seeing the victim reach into his back pocket after putting up his fists to fight, assumed that the victim had a knife and, fearing for his own safety, pulled a knife himself. [462-465] ARMSTRONG J., dissenting.

INDICTMENT found and returned in the Superior Court Department on December 16, 1982.

The case was tried before *Simons, J.*

*Christopher S. Skinner* for the defendant.

*Paul J. McCallum,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The defendant appeals from his conviction on an indictment charging him with assault and battery by means of a dangerous weapon. Verdicts of not guilty were returned on indictments arising out of the same incident and charging him with assault with intent to murder and armed robbery. The sole question on appeal is whether the trial judge erred in refusing to instruct the jury on the question of self-defense. We reverse.

There was evidence to show that although the victim and the defendant were not acquaintances, they knew each other by sight. The only testimony as to the fight between them comes from the victim and the defendant, and their versions are in sharp conflict. Their testimony as to the cause of the fight

is, however, consistent but for some irrelevant and minor points. It appears that a few days before the present incident, the victim had been making accusatory remarks about the defendant's attempting to rob him.

The victim's version of the fight is as follows. On the afternoon of September 24, 1982, he was sitting on the steps of an apartment building where his girlfriend lived, awaiting her return. The defendant came along and confronted him about statements the victim had made to the effect that the defendant had tried to rob him. The victim responded that his statements had been that "I felt I was going to be robbed." An argument ensued with the defendant declaring that were he inclined to rob the victim, he would do so then and there. As the exchange escalated, the defendant announced that he was going to beat the victim. The victim, evidently preparing for the combat, threw down a sweater he had been carrying and when he looked up, he saw that the defendant had pulled out a knife. He slashed at the victim, cutting him on the chest and hand. The victim then ran about twenty yards to retrieve a brick with which to defend himself, but the defendant, who was chasing him, caught and wrestled with him. The victim ended up face down on the ground, the defendant straddling his back. Feeling a numbness in his hand (there was medical evidence showing that the victim's hand, in the wrist area, had been deeply cut, or as described in the medical records "[p]artial [a]mputation L [h]and"), the victim urged the defendant to let him up, stating, "I got to go to the hospital." The defendant took two silver chains from the victim's neck and seven dollars from his pocket. The two parted when the defendant warned the victim to "get out of here before I smash your head in."

According to the defendant, he was about to enter the apartment building where he lived, when he noticed the victim sitting on the steps. He went up to the victim and asked why "was he saying that I tried to rip him off the night before." The argument started, and the defendant and victim were "pushing" each other as words were exchanged. The victim then told the defendant to "[c]ome around the corner. Let's talk about it like a man." The defendant accepted the invitation and

followed the victim around the corner. The victim threw down his sweater and "put his hands up like he was going to fight with his hands." The men were "face to face." After the victim had put up his fists as to fight, he then "went in his back pocket . . . [l]ike he was reaching for something." When the victim reached for his back pocket, the defendant pulled out his knife[1] and "started swinging." The defendant testified that when he started swinging, the victim was "seven feet," "seven yards, I am not sure," from him.[2] The defendant swung the knife "several" times for about "five seconds,"[3] and then each ran off in opposite directions. The defendant denied all aspects of the victim's account, major portions of which were disbelieved by the jury, as is apparent from the verdicts of not guilty on the armed robbery and assault with intent to murder charges.

Defense counsel made no opening statement to the jury, but it is evident from his examination of the witnesses that a theory of self-defense was being advanced. He correctly made no mention of self-defense in his closing argument, because he had been advised by the trial judge that he would not instruct on self-defense.[4] In refusing to give the requested instruction, the trial judge stated: "The important thing for the decision is that, at some point, the defendant admits unshielding his knife and striking the victim with the knife. At no point, did he ever see a knife in the victim's hand."

Our analysis is based upon the defendant's account of the fight because it is more favorable to him than the victim's. See *Commonwealth* v. *Maguire,* 375 Mass. 768, 769 (1978). If

---

[1] The defendant testified that he began carrying a knife a few months earlier because he had been stabbed in his side and hospitalized for the wound.

[2] The defendant also described the distance by reference to the location of furniture in the courtroom. This type of testimony is particularly uninformative to a reader of the transcript.

[3] During this "five seconds" of swinging, the defendant did not know that he had cut the victim.

[4] Defense counsel objected to the trial judge's ruling and specifically stated for the record that his closing argument had been tailored to the ruling. Compare *Commonwealth* v. *Zaccagnini,* 383 Mass. 615, 617 (1981); *Commonwealth* v. *Deeran,* 10 Mass. App. Ct. 646, 648-649 (1980).

there is any support in the defendant's testimony for the claim of self-defense, then the trial judge was required to give the instruction, allowing the jury to assess the credibility of the evidence.[5]

Although the defendant chose to accept the victim's invitation and followed him around the corner (see *Commonwealth* v. *Bertrand*, 385 Mass. 356, 362 [1982], where the court stated that "[b]efore a defendant is entitled to an instruction on self-defense, there must be evidence that he first took advantage of every reasonable opportunity to avoid the combat"), he is not precluded from asserting self-defense if subsequent events changed the nature of the invitation he accepted. Cf. 2 Torcia, Wharton's Criminal Law § 134 (14th ed. 1979) ("Where the defendant and another engage in mutual combat, resulting in the latter's death, the defendant is guilty of an unlawful homicide and cannot claim that he acted in self-defense. However, if the use of force by the deceased — contrary to the mutual understanding of the parties — escalates to such a degree that the defendant reasonably believes he is in imminent danger of death or great bodily harm, the defendant's use of deadly force will constitute an excusable homicide").[6] Taking the evidence in the light most favorable to the defendant, we think that the

---

[5] During their deliberations, the jury returned with the following question: "What constitutes self-defense as relating to the charge of assault and battery?" The trial judge responded to the question by explaining that he had not instructed and would not instruct on self-defense which is available only in certain situations which he then described, cautioning them that his description was "hypothetical . . . because I do not wish to comment on any of the evidence that came out."

[6] We do not read *Commonwealth* v. *Bertrand*, 385 Mass. at 362, as stating a different proposition. The combat in that case could also be characterized as mutual, i.e., the defendant and the deceased agreed to leave the bar to go to the parking lot. The defendant anticipated that a fight might take place, but he did not leave the bar, notwithstanding ample time and opportunity to do so. Instead, he approached the deceased, the two agreed to leave the bar to go to the parking lot, and, according to the defendant's testimony, the fight was of a nature he invited and expected — it was a third person, according to the defendant, who unexpectedly struck the lethal blow with a dangerous weapon. The testimony of the witnesses, including the defendant, "left Bertrand no opening for a viable claim of self-defense." *Id.*, at 362-363.

jury could have found that the defendant followed the victim intending to engage in a fist-fight with him. The questions to be resolved, therefore, are: (1) whether the victim's gesture of reaching to his back pocket was sufficient to create in the defendant a "reasonable apprehension of great bodily harm and a reasonable belief that no other means [than use of a deadly weapon] would suffice to prevent such harm," *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955); and (2) if the defendant reasonably believed the victim to be armed could he nonetheless have avoided the combat. *Ibid.*

We think that in the circumstances of this case the victim's gesture was of such a nature as to require leaving to the jury, upon appropriate instruction and by employment of an "objective" standard, see *Commonwealth* v. *Albert,* 391 Mass. 853, 861 (1984), the question whether the defendant's apprehension and belief were reasonable. See *Commonwealth* v. *Mann,* 116 Mass. 58 (1874). Compare *Monize* v. *Begaso,* 190 Mass. 87 (1906). The facts that the defendant did not know with certainty whether the victim had a knife or other weapon in his back pocket and that he did not wait to find out before reaching for his weapon are certainly factors to consider in determining whether he acted reasonably, but they do not preclude him, as matter of law, from claiming self-defense. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980) ("There must be evidence warranting at least a reasonable doubt that the defendant . . . had reasonable ground to believe and actually did believe that he was in *imminent* danger of death or serious bodily harm, from which he could save himself only by using deadly force") (emphasis supplied).

As to the question whether the defendant, upon seeing the victim reach in his back pocket, could have avoided the combat rather than use his knife, we think that too is a question for the fact finder. The description of the area in which the fight took place is somewhat vague, but the defendant stated that there are three buildings (two of which are connected) "like on the edge of the park." But the defendant also stated that he and the victim were "face to face" and that the incident lasted about "five seconds." Compare *Monize* v. *Begaso,* 190 Mass. at

89, where the court stated that "the question how far a party may properly go in self defense is a question for the jury, not to be judged of very nicely, but with due regard to the infirmity of human impulses and passions," and held that the defendant had not acted in self-defense for the reason, among others, that instead of rowing away from the victim, he first tried to pull the victim into his boat and when that failed, he jumped into the victim's boat, held the victim by his hair and punched him repeatedly as hard as he could. Compare also *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963), where the defendant, who was seated behind the wheel of his car, arguing with his wife who stood outside the car and called for help, was not entitled to a self-defense instruction because when help appeared he began to shoot his gun rather than "easily . . . plac[ing] himself out of danger by driving away."

Viewing the facts related by the defendant in their totality rather than in an isolated movement-by-movement fashion, we conclude that the trial judge should have instructed the jury on the issue of self-defense. See *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211-213 (1966).

*Judgment reversed.*

*Verdict set aside.*

ARMSTRONG, J. (dissenting). The evidence most favorable to the defendant, his own story, was that he and the victim argued, engaging in some pushing, and then agreed to go around the corner (of a building) "to talk about it like a man." The victim threw down his sweater, put up his fists to fight, and then reached into his back pocket. The defendant assumed the victim had pulled a knife and, fearing for his safety, pulled a knife himself. The combatants were then seven feet apart. The victim ran at the defendant who made slashing motions with the knife to fend off the victim. The victim did not have a knife and, as far as the evidence shows, did not strike the defendant. The defendant's slashing lasted five seconds, the victim sustaining several serious wounds. In my opinion the

judge was correct in ruling that this evidence did not warrant submitting the issue of self-defense to the jury.

There was no evidence that the defendant had been set upon unexpectedly at the time he drew the knife (contrast *Commonwealth* v. *Houston,* 332 Mass. 687, 689 [1955]; *Commonwealth* v. *Kendrick,* 351 Mass. 203, 207 [1966]; *Commonwealth* v. *Harrington,* 379 Mass. 446, 451 [1980]; *Commonwealth* v. *A Juvenile,* 17 Mass. App. Ct. 988, 989 [1984]), was being subjected to a beating, severe or otherwise (contrast *Commonwealth* v. *Kendrick,* 351 Mass. at 207, *Commonwealth* v. *Harrington,* 379 Mass. at 451), or that he was in a confined space which made flight impracticable (contrast *Commonwealth* v. *Harrington,* 379 Mass. at 451-452; *Commonwealth* v. *Albert,* 391 Mass. 853, 856 [1984]). There was no evidence that he had reason to fear intervention by friends of the victim (contrast *Commonwealth* v. *Burbank,* 388 Mass. 789, 796 [1983]; *Commonwealth* v. *A Juvenile,* 17 Mass. App. Ct. at 989).

Fist fights by agreement are a fact of life, and, while the law cannot condone them, it should strongly discourage the introduction of deadly weapons and not lightly accept pretexts for their introduction. Accepting (as, for present purposes, we must) the defendant's contention that he honestly thought the victim had pulled a knife, I think the evidence is devoid of any sufficient showing that the defendant could not then have withdrawn from the fray. Instead, on his own story, he stayed, drew a knife, and for five seconds slashed an unarmed victim who did not land a blow. This evidence, if accepted, goes no further than to show that the defendant, thinking the stakes of the proposed fight had been raised by the introduction of a knife, decided to stay and fight on that basis. No question of self-defense is raised by that decision. See *Commonwealth* v. *Bertrand,* 385 Mass. 356, 362 (1982); Perkins, Criminal Law 999 (2d ed. 1969); 2 Torcia, Wharton's Criminal Law 152 (14th ed. 1979). Cf. *Commonwealth* v. *Collberg,* 119 Mass. 350, 353 (1876).

I would affirm the judgment.