## COMMONWEALTH *VS.* DAMON WILLIAMS.

No. 00-P-781.

Suffolk. November 9, 2001. - February 4, 2002.

Present: BROWN, GREENBERG, & McHUGH, JJ.

*Assault and Battery. Practice, Criminal,* Instructions to jury, Argument by prosecutor, Argument by counsel. *Self-Defense. Evidence,* Self-defense. *Arrest. Police,* Unlawful arrest.

At the trial of an indictment charging assault and battery on a police officer, the defendant was not entitled to an instruction regarding self-defense, where the evidence showed that the defendant did little to avoid the combat. [720-722]

The defendant at the trial of indictments charging assault and battery on two police officers was not entitled to an instruction on excessive force, where the evidence suggested that he forcibly resisted arrest for a period of several minutes, and where there was no evidence of unnecessary force on the part of either officer. [722-723]

At a criminal trial, the prosecutor's remarks in her opening statement that a witness for the prosecution might retract some of her account to police because of a vested interest in protecting her relationship with the defendant were fair inferences that the jury might draw from testimony. that was reasonably forecast by the prosecutor's knowledge of the witness's motive for testifying [723-724]; moreover, the prosecutor's references to the witness being kicked "in the belly" by the defendant, while clearly an attempt to garner sympathy for the witness, did not cause prejudice to the defendant, where the remarks did not "go to the heart" of the defendant's case [724-725].

The judge at a criminal trial properly foreclosed two portions of defense counsel's closing argument, where the first portion would have required the jury to speculate on a hypothesis not supported by the evidence, and where, in the second portion, counsel was trying to circumvent a ruling of the judge. [725-726]

INDICTMENTS found and returned in the Superior Court Department on August 25, 1998.

The cases were tried before *Charles F. Barrett, J.*

*Claudia Leis Bolgen* for the defendant.

*Kajal K. Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. On July 18, 1998, Natasha Reavis boarded a bus at the South Bay Mall in Boston. The defendant, with whom she shared a turbulent relationship, followed her onto the bus and sat down beside her. They had been quarreling, and, according to Reavis, even though she was eight months pregnant with his child, she had decided on that day to break up with him. While Reavis and the defendant sat together on the bus, an argument about her decision, fueled by mutual animosity, burst into violence. Blows were exchanged. Reavis lay bloodied on the floor, causing the driver to halt the bus and call for help. At that point, the defendant jumped off the bus. He headed back to mall, but before he got inside, Neva Grice, a uniformed Boston police officer who was called for pacification, crossed his path. Her efforts were only fleetingly successful.

There followed a second struggle between the defendant and Officer Grice. An off-duty Boston police officer, Anthony Francis, passed by in his vehicle and came to Grice's aid. After a tussle between the defendant and Francis, who was not in uniform, the defendant was subdued, placed under arrest, and indicted on numerous charges.

A Superior Court jury convicted the defendant of resisting arrest, two counts of assault and battery on a police officer, and one count of assault and battery. On appeal, the defendant argues that, with respect to the conviction of assault and battery on Francis, the judge erred in failing to deliver a requested instruction on self-defense. With respect to both convictions of assault and battery on Officers Francis and Grice, he contends that the judge should have given the jury an excessive force instruction. The defendant also claims that the judge improperly limited trial counsel's closing argument and that certain remarks made by the prosecutor during the course of her opening and closing statements to the jury were improper, entitling him to a new trial.

1. *Self-defense instruction.* A trial judge has broad discretion in the giving of instructions. *Commonwealth* v. *MacDonald*, 371 Mass. 600, 603 (1976). "To be entitled to an instruction about self-defense by nondeadly force, the evidence, taken in the light most favorable to the defendant, must warrant reasonable apprehension by the defendant that he (1) [was] in danger of

personal harm; (2) [could] avoid that harm only by resort to force; (3) attempted to avoid physical combat or was unable to do so before resorting to force; and (4) used only the force necessary in the circumstances." *Commonwealth* v. *Alebord*, 49 Mass. App. Ct. 915, 915-916 (2000).

Here, the judge instructed as to self-defense with respect to the charge of assault and battery on Reavis, but he refused such an instruction relative to the assaults on Officers Francis and Grice. On appeal, the defendant restricts his self-defense argument to the assault and battery charge involving Francis.

A trial judge faced with a request for an instruction is guided by the principle that a defendant is not entitled to an instruction on a hypothesis that is not supported by the evidence. *Commonwealth* v. *Monico*, 373 Mass. 298, 299 (1997). On the other hand, "if any view of the evidence would provide support for an affirmative defense, a defendant is entitled to such an instruction." *Ibid.*

The defendant's strategy at trial was to discredit Francis's testimony and the testimony of an eyewitness, a private security guard. By cross-examination of these witnesses — the defendant did not testify or call any witnesses — he attempted to show that the officers instigated the fracas that resulted in his arrest. Officer Grice, who did not recognize Officer Francis because he was in civilian clothes, testified that Francis had approached the defendant after he left the bus and a "struggle ensued between the two of them." In his brief, the defendant argues that, from this, the jury could have inferred that Francis was the aggressor, and the defendant was merely defending himself. He also highlights part of the security guard's testimony in which he said that Francis (while struggling with the defendant) put a "bear-hug" on him. Our review of the record on this point indicates that the defendant has taken this testimony out of context to embellish his argument.

On the whole, the Commonwealth's proof established that the defendant was less than compliant and continued physically to resist arrest long after it was apparent that Francis was, in fact, acting in his capacity as a police officer. Francis's uncontroverted testimony was that the defendant ran away from Officer Grice directly toward him and that he told him to "[h]old

up. I'm a police officer. Chill out for a second." He testified that the defendant replied, "I don't give a fuck who you are," and tried to push past Francis. At this point, Francis grabbed the defendant, and the defendant "threw" him against a vehicle. That other witnesses did not confirm these details does not mean that Francis's testimony concerning the defendant's aggressive behavior could not be credited. In this case, the judge was correct in concluding that, drawing every inference favorable to the defendant, the state of the evidence did not justify the defendant's reliance on self-defense. There was insufficient evidence to raise the issue, if for no other reason than that the defendant appears to have done little to avoid the combat. *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000). *Commonwealth* v. *Alebord*, 49 Mass. App. Ct. at 916. *Commonwealth* v. *Alves*, 50 Mass. App. Ct. 796, 809 (2001).

2. *Excessive force instruction.* The defendant's related argument is that the judge failed to instruct the jury that "where [a police] officer uses excessive or unnecessary force to subdue the arrestee, regardless of whether the arrest is lawful or unlawful, the arrestee may defend himself by employing such force as reasonably appears to be necessary." *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983). Those issues "are questions of fact to be resolved by the jury on proper instruction by the trial judge." *Id.* at 602.

The defendant's request for a *Moreira*-type instruction was subject to various sidebar discussions. The defendant's point was that Officer Francis had used excessive force to immobilize him because Francis mistakenly thought Officer Grice's gun had been taken during the struggle and did not know where it was, and that a crowd of seven or eight persons then pounced on the defendant. After reviewing trial notes as to the testimony with respect to the defendant's arrest, and after considering the defendant's arguments, the judge ruled that there was "no evidence to raise an issue of excessive or unnecessary force by the police." On appeal, as below, the defendant argues that Officer Grice's testimony can be read to suggest excessive force on the part of Officer Francis. Because the defendant did not present any evidence, however, the point is subject to the same infirmities as the defendant's self-defense argument.

Our reading of the record confirms the judge's view that the defendant put on a "battle royal" when the persons present, including the two officers, were trying to secure him in handcuffs, and that his continuing struggle called for the assistance of Francis. The evidence, read most favorably to the defendant,[1] suggests that he forcibly resisted arrest for a period of several minutes, first with Grice and then with Francis. The prosecution's evidence cannot be read to provide evidence of unnecessary force on the part of either officer. In these circumstances, the defendant was not entitled to the requested instruction.

3. *Prosecutor's opening and closing statements.* In her opening statement, the prosecutor suggested that Reavis's version of the events might be out of focus; in other words, that she might have retracted some of her account to the police because, at the time of trial, she had a vested interest in protecting her relationship with the defendant, the father of her child. The defendant moved for a mistrial, which was denied. The defendant's argument here is that "denigrating the credibility of a prosecutor's own witness who might testify favorably for the defense during an opening statement should be considered by this [c]ourt to be beyond the bounds of proper advocacy."

This argument fails for lack of evidentiary support because the prosecutor's remarks were borne out by Reavis's subsequent abbreviated testimony. The remarks were designed to show that she was a reluctant witness. "A prosecutor is free to articulate in her opening statement a particular underlying motive which is expected to be proved in the case-in-chief as long as that expectancy is reasonable and grounded in good faith." *Commonwealth* v. *Snow*, 34 Mass. App. Ct. 27, 34 (1993). That Reavis denied she was afraid the defendant would do her harm, should she testify against him, was a problem for the prosecution during her direct examination. As the prosecutor knew that Reavis would be less than helpful, her opening statement

---

[1]Although we have found no case law which states that the evidence should be viewed in the light most favorable to the defendant in evaluating the propriety of an excessive force instruction, we adopt this approach since the concepts of excessive force and self-defense are so closely related. See *Commonwealth* v. *Moreira*, 388 Mass. at 601-602; *Commonwealth* v. *Francis*, 24 Mass. App. Ct. 576, 579 (1987).

provided the jury with an indication that Reavis did not wish to implicate the defendant, and that her present focus was not the events as they occurred on July 18, 1998, but rather on her ongoing relationship with the defendant afterwards. Contrary to the defendant's argument, these were not remarks based on the prosecutor's personal beliefs; rather, they were fair inferences that the jury might draw from testimony that was reasonably forecast by the prosecutor's knowledge of the witness's motive for testifying. *Commonwealth* v. *Freeman*, 430 Mass. 111, 118-119 (1999). *Commonwealth* v. *Rivera*, 52 Mass. App. Ct. 321, 325 (2001).

In opening, the prosecutor also stated that the defendant "kicked Ms. Reavis while she was on the ground, several times, to her eight month pregnant belly." In closing, she stated that the defendant "kicked her in the belly" and that the defendant used his shoes or a dangerous weapon "on her belly." The defendant moved for a mistrial, which the judge denied. The defendant then asked for a specific instruction that Reavis had not testified to being kicked in the belly. The judge refused such an instruction, delivering the standard warning that arguments of counsel are not evidence.

On appeal, the defendant argues that the prosecutor did not lay a proper foundation for her reference to Reavis being kicked "in the belly." In fact, the record gives some credence to what the prosecutor stated. With respect to what occurred on the bus, among other things, Reavis testified that "[the defendant] took his foot, and kicked me in my side, while I was pregnant." This testimony does fall short of the image conjured by the prosecutor's statements, but not by much. An emergency medical technician testified that Reavis had complained of "some abdominal pain." We know from the record that the prosecutor herself was visibly pregnant which, no doubt, made the argument more effective.[2] The comments — clearly an attempt to garner sympathy for Reavis — are quite close to the line of impropriety, but in the circumstances the defendant did not suffer prejudice because, while he was convicted of assault and battery on Reavis, he was acquitted of assault and battery with

---

[2]The defendant attempted without success to get the prosecutor removed from the case because she was "well advanced in her [own] pregnancy."

a dangerous weapon (to wit: a shod foot).[3] Further, even if there was error, the remarks did not "go to the heart" of the defendant's case, *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987), given that defendant's theory of the case on this count was self-defense, and that there was evidence that both Reavis and the defendant had physically abused one another during their tempestuous relationship.

4. *Limiting the defendant's closing argument.* In closing argument, defense counsel suggested to the jury that the defendant may not have known Francis was a police officer because, at the conclusion of the struggle, the crowd that it had attracted was apparently unaware of that fact. The judge interrupted, and at sidebar he foreclosed the argument. We conclude that the judge acted within the bounds of his discretion.

The reader will recall that Francis testified that he had informed the defendant that he was a police officer. The defendant did not present any evidence to the contrary. Defense counsel's argument was improper because it would have required the jury "to speculate on a hypothesis not supported by the evidence." *Commonwealth* v. *Paton*, 31 Mass. App. Ct. 460, 464 (1991). The prosecution's primary theory, borne out by the evidence, was that the crowd had converged after the struggle between the defendant and Francis had gone on for five to seven minutes, and well after the initial confrontation in which Francis had identified himself as a police officer. Unlike the situation in *Commonwealth* v. *Cutty*, 47 Mass. App. Ct. 671, 674-677 (1999), cited by the defendant, this is not a case where the judge precluded relevant arguments that "remain within the bounds of the evidence and the fair inferences from the evidence." *Commonwealth* v. *Pettie*, 363 Mass. 836, 840 (1973).

Similarly, the judge acted within the bounds of his discretion when he interrupted defense counsel's closing a second time to preclude him from arguing excessive force as a defense for both assaults. Defense counsel's argument was particularly egregious

[3]Similarly, with regard to the prosecutor's statements in closing that Reavis was afraid the defendant was going to kill her (Reavis had testified that the defendant had said he was going to kill her, but she had also testified that she "wasn't too scared because he was in prison"), the jury acquitted the defendant of the charge of threatening to commit a crime. In addition, the judge cautioned the jury that the closing statement was not evidence.

because, in a lengthy charge conference preceding the closing arguments, the judge had concluded that there was no evidence upon which to give an instruction to that effect; and both the prosecutor and defense counsel were so advised. Defense counsel's conduct in disregarding the judge's ruling and pressing the point ran counter to the procedure approved in *Commonwealth* v. *Barber*, 18 Mass. App. Ct. 460, 462 & n.4 (1984), *S.C.*, 394 Mass. 1013 (1985). In any event, "[t]he judge did not cross the line separating judicial guidance from judicial bias." *Commonwealth* v. *Carney*, 31 Mass. App. Ct. 250, 254 (1991). The judge's cutting off defense counsel's attempt to circumvent his ruling was appropriate.

*Judgments affirmed.*