## COMMONWEALTH vs. JOSHUA LINHARES.

No. 10-P-980.

Bristol. January 11, 2011. - November 15, 2011.

Present: BERRY, WOLOHOJIAN, & HANLON, JJ.

*Animal. Practice, Criminal,* Required finding, Motion for a required finding, Appeal by Commonwealth. *Notice.*

This court declined to consider a challenge to the allowance of a motion to file a late notice of appeal, made by the Commonwealth in a criminal matter after a motion for a required finding of not guilty had been allowed after discharge of the jury, where the defendant did not appeal from the order allowing the motion to file a late notice of appeal or move to dismiss the appeal. [822-823]

A District Court judge erred in granting a criminal defendant's motion for a required finding of not guilty after discharge of the jury in a trial on a complaint charging the defendant with cruelty to an animal, where, viewing the evidence and permissible inferences in the light most favorable to the Commonwealth, the evidence was sufficient to permit the jury to conclude that the defendant knowingly and intentionally ran over a duck with his car. [823-825]

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on July 2, 2009.

The case was tried before *J. Thomas Kirkman*, J., and a motion for a required finding of not guilty after discharge of the jury was heard by him; a motion to file a late notice of appeal was considered by *Bernadette L. Sabra*, J., and a motion for reconsideration was heard by *J. Thomas Kirkman*, J.

*Darragh K. Kasakoff*, Special Assistant District Attorney, for the Commonwealth.

*Barry R. Hodge* for the defendant.

HANLON, J. After a jury trial, the defendant was convicted of cruelty to animals for an incident in which he struck and killed a duck with his car in a mall parking lot. The trial judge allowed the defendant's posttrial motion for a required finding of

not guilty, pursuant to Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995).

More than thirty days later, the Commonwealth moved to file a late notice of appeal, which motion was granted, and now argues that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain the conviction. We agree and reverse.[1]

1. *Facts.* The jury heard evidence that on June 13, 2009, a clear bright afternoon, Katherine Souza (Souza) was paying her bill at Macy's department store in the Dartmouth Mall. At approximately 4:45 P.M., she left and went outside to the truck where her husband was waiting. When she got into the truck, she saw "a mother duck and babies" approximately five feet from the truck. There was not much traffic, but "a lot of pedestrians," perhaps five or ten, were in the vicinity. Souza testified, "People were out of their vehicles watching [the ducks]." Souza and her husband backed out and headed for a nearby intersection, which had a three-way stop sign. On the way, they saw what she described as the mother duck proceed across the parking lot with the smaller ducks following. About ten or fifteen feet from the stop sign, Souza and her husband stopped because they saw the mother duck start down off the curb. She then observed the defendant's car approach from the cross street to her right, stop briefly at the stop sign, and then "it seemed like he just hit the accelerator and ran the mother duck, hit the mother duck." After he struck the duck, the defendant "stopped and smiled" at Souza and her husband. She yelled at him, "How could you do that?" The defendant then "hit the gas and fled the scene." The Souzas followed him and wrote down the license number of his vehicle.

Nathan Souza, who is not related to Katherine Souza, was a student and a loss-prevention officer at Macy's in the Dartmouth Mall. On June 13, he was monitoring a security video camera in the store parking lot. He noticed one of his colleagues watching the duck and the ducklings walking across the

---

[1] We do not reach the defendant's additional argument, that the judge abused his discretion when he found "excusable neglect" for the Commonwealth's late filing of a notice of appeal, because the defendant did not appeal from that order, file a cross appeal, or move to dismiss the appeal.

parking lot "and when they got to the road, the mother duck went first, then a vehicle cut the corner, hit the duck, and sped off." He ran outside and saw that "the mother duck was still standing up, but her guts and the in — you know, was out on the road, and she was trying to waddle back to her ducklings. And when she finally got to [them], she just collapsed and died. And [they] got a box and . . . [he] placed the mother duck in a box . . . . Then [he] placed the baby ducks in the box with the mother." He also called the Dartmouth police department. The video recording from the store security camera was admitted by agreement. We have reviewed it, and it corroborates the testimony of both the Commonwealth's civilian witnesses.

The defendant testified that he saw a woman waving at him; he said that he did not see the duck in the road until he felt his car go over something and looked in the rear view mirror. He drove away because the people in the truck to his left were "obviously upset."

2. *Posttrial motions.* a. *Motion for required finding of not guilty after discharge of jury.* During the trial, the defendant moved for a required finding of not guilty at the close of the Commonwealth's case and also at the close of all the evidence; the motions were denied, and the judge sentenced the defendant to six months' probation. On December 11, 2009, the defendant filed a motion for a required finding of not guilty after discharge of the jury, Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995); the trial judge heard the motion on December 22 and took it under advisement.[2] On February 3, 2010, the judge allowed the motion.

b. *Motion to file late notice of appeal.* The appellate division of the Bristol County district attorney's office reviewed the matter and made a decision not to appeal based upon the cost of the appeal. However, on March 18, 2010, a private attorney, Darragh Kasakoff, offered to volunteer his time to pursue the appeal on behalf of the Commonwealth, and the Commonwealth accepted. A late notice of appeal, together with a motion for leave to extend the time to file an appeal, were filed on March

---

[2]The day the motion was taken under advisement, the trial judge, pursuant to Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979), sua sponte revoked and revised the defendant's sentence of probation and imposed a $250 fine.

23, 2010, twenty days after the deadline for filing a notice of appeal from the order allowing the defendant's rule 25(b)(2) motion. Pursuant to Mass.R.A.P. 4(c),[3] a judge, who was not the trial judge, allowed the Commonwealth's motion to file a late notice of appeal. On May 6, 2010, the trial judge heard and denied the defendant's motion for reconsideration of the order allowing the late notice of appeal, determining that there was "excusable neglect" on the part of the Commonwealth.[4]

Rule 4(b) of the Massachusetts Rules of Appellate Procedure, as amended, 431 Mass. 1601 (2000), pertains to the filing of notices of appeal in criminal cases and specifies, among other things, that the defendant's notice of appeal shall be filed within thirty days of the "entry of a notice of appeal by the Commonwealth." Here, the defendant did not appeal from the judge's allowance of the motion to file a late notice of appeal or from the denial of his motion for reconsideration; he also did not file a cross appeal or move to dismiss the appeal.

The defendant now argues that the judge abused his discretion when he allowed the Commonwealth's motion to file a late notice of appeal. In his view, the Commonwealth did not demonstrate excusable neglect. Conceding that he failed to appeal the allowance of that motion or the denial of his motion for reconsideration, and that he did not file a cross appeal or move to dismiss the appeal, the defendant nevertheless argues that a challenge to the lateness of an appeal is jurisdictional, and that such a challenge is appropriate at any stage of the proceeding. For support, he cites *Commonwealth* v. *Armstrong*, 73 Mass. App. Ct. 245, 250 n.3 (2008), which does, indeed, state that "jurisdiction may be challenged at any time," although

---

[3] "Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem appropriate." Mass.R.A.P. 4(c), as amended, 378 Mass. 928 (1979).

[4] Because the defendant was not given an opportunity to respond in writing or to be heard on the Commonwealth's motion to extend the time for filing an appeal, the trial judge treated the motion for reconsideration as an "original hearing on the Commonwealth's Motion to File Late Notice of Appeal."

the facts of that case are not related to the timeliness of a notice of appeal.

The flaw in the defendant's argument is that he conflates the jurisdictional issue that arises when no notice of appeal has been timely filed, see, e.g., *Commonwealth* v. *Mullen*, 72 Mass. App. Ct. 136, 137-138 (2008), with the situation here, where a notice of appeal has been filed by leave of court within an extended deadline, as permitted under rule 4(c). In this latter situation, had the defendant properly appealed from the order allowing the motion to file a late notice of appeal or moved to dismiss the appeal, we would review to determine whether the motion judge had abused his discretion or misinterpreted the rule. Because he failed to do so, the matter is not properly before us.

3. *Sufficiency of the evidence.* The Commonwealth argues that the trial judge abused his discretion and committed an error of law when he set aside the guilty verdict and entered a finding of not guilty under rule 25(b)(2). "Rule 25(b)(2) and its statutory predicate, G. L. c. 278, § 11, offer a defendant, on motion after jury verdict, three options for potential relief: a new trial, a verdict of not guilty, or the entry of a verdict of any lesser included offense. . . . In order to enter a verdict of not guilty, our courts have consistently held that the standard is that for a required finding of not guilty as set out in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), and it progeny." *Commonwealth* v. *Walker*, 68 Mass. App. Ct. 194, 197-198 (2007). We review, therefore, to determine "whether there was enough evidence, when taken in the light most favorable to the Commonwealth, that 'could have satisfied a rational trier of fact of each [essential element of the offense] beyond a reasonable doubt.' In using that standard the judge cannot weigh the evidence or assess the credibility of the witnesses . . . [lest he] invade the province of the jury as the sole finder of fact in a jury trial." *Commonwealth* v. *Torres*, 24 Mass. App. Ct. 317, 324 (1987), quoting from *Commonwealth* v. *Latimore, supra,* at 677-678.

The governing statute, G. L. c. 272, § 77, as appearing in St. 1977, c. 921, § 2, provides: "Whoever . . . cruelly beats, mutilates or kills an animal . . . shall be punished . . . ." "Cruelty in this context is '[s]evere pain inflicted upon an

animal . . . without any justifiable cause.' *Commonwealth* v. *Lufkin*, 7 Allen 579, 581 (1863). Specific intent to cause harm is not required; 'decisional law makes clear that in circumstances involving the direct infliction of pain on an animal all that must be proved is that the defendant "intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain." ' *Commonwealth* v. *Erickson*, [74 Mass. App. Ct.] 172, 177 (2009), quoting from *Commonwealth* v. *Magoon*, 172 Mass. 214, 216 (1898)." *Commonwealth* v. *Zalesky*, 74 Mass. App. Ct. 908, 909 (2009). "The defendant's guilt did not depend upon whether he thought he was unnecessarily cruel, but upon whether he was so in fact." *Commonwealth* v. *Magoon, supra.*

The issue here is whether, viewing this evidence, together with permissible inferences, in the light most favorable to the Commonwealth, any rational jury could have concluded that the defendant intentionally ran over the duck. The defendant does not argue that he had some lawful purpose or that any pain inflicted was necessary; his only defense was that he did not see the duck and that striking her with his car was an accident. Thus, the case turns on issues of credibility and on what inferences about the defendant's state of mind were to be drawn from all of the evidence. Those are jury questions.

The trial judge found as a fact, after viewing the video, that "[t]he duck walk[ed] under the defendant's car while he [was] turning and [was] struck by the rear wheel on the driver's side."[5] The judge observed that the duck was a wild animal and that the "defendant was under no obligation to stop, even if he knew he hit the duck." He then concluded, quoting from *Commonwealth* v. *Turner*, 145 Mass. 296, 300 (1887), that the Commonwealth did not adequately establish the defendant's "intent to commit the 'cruel and barbarous' acts proscribed by the law."

In so concluding, the judge necessarily did one of two things. It may be that he determined that the defendant did not intend

---

[5]The point of impact is obscured in the video recording; therefore, the judge necessarily drew an inference in order to arrive at that conclusion. Others might draw a different inference. However, permissible inferences were for the jurors to draw, based upon all of the testimony they found credible, including Souza's testimony that the defendant accelerated and then hit the duck.

to hit the duck and that the incident was therefore an accident, although he did not use that word. If so, he impermissibly substituted his judgment about the facts for that of the jury. Alternatively, the judge misunderstood the law as requiring that the defendant had a specific intent to be "cruel and barbarous." In his findings, the judge stated, "Here, the defendant clearly intended to drive his car. But, there does not appear to be sufficient evidence that his intention was 'plainly of a nature to inflict unnecessary pain' upon any animal, much less the duck."

The quotation is from *Commonwealth* v. *Zalesky, supra,* and contains only part of the language. The entire passage reads, " 'The defendant's guilt did not depend upon whether he thought he was unnecessarily cruel, but upon whether he was so in fact. *It need not appear that he knew that he was cruel, and that he was willing to be so, but only that he intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain,* and so were unnecessarily cruel.' *Commonwealth* v. *Magoon, supra.*" *Ibid.* (Emphasis supplied.) Thus, the judge appears to have rested his decision on his understanding that specific intent to cause pain was required for conviction. Neither the statute nor case law is so demanding. All that is required is that the defendant knowingly and intentionally hit the duck with his car, and that such an action was clearly likely to inflict unnecessary pain. In addition, we note that the statute makes no distinction between wild animals and domesticated animals and that the defendant was not charged with leaving the scene of an accident.

*Conclusion.* The order allowing the defendant's motion pursuant to rule 25(b)(2) is vacated and a new order is to enter denying the motion. The jury verdict of guilty of cruelty to animals is reinstated.

*So ordered.*