NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-155                                          Appeals Court

COMMONWEALTH  vs.  STANLEY F. SZEWCZYK.

No. 15-P-155.

Hampshire.      December 14, 2015. - July 14, 2016.

Present:  Grainger, Hanlon, & Agnes, JJ.

Dog.  Animal.  Practice, Criminal, Findings by judge.

Complaint received and sworn to in the Northampton Division of the District Court Department on June 10, 2014.

The case was heard by Jacklyn M. Connly, J.

Thomas P. Vincent for the defendant.
Thomas H. Townsend, Assistant District Attorney, for the Commonwealth.

HANLON, J.  After a jury-waived trial in the District Court, the defendant was convicted of one count of cruelty to an animal in violation of G. L. c. 272, § 77.  He now appeals, arguing that the judge erred in denying three of his eleven

requests for rulings of law, pursuant to Mass. R. Crim. P. 26, 378 Mass. 897 (1979).[1]  We affirm.

Background.  The judge heard the following facts.  Amy Lovell moved with her partner and two children to a new home in Hatfield in October, 2013; the family planned to farm.  The farm was also home to a cat, ten goats, approximately twenty-five chickens, and a sheepdog named Kiera.  On January 26, 2014, Lovell noticed that Kiera, who had been tied with a nylon leash to the woodshed in Lovell's yard, had chewed through the leash and wandered off the property.[2]  Lovell and her partner got in

---

[1] The rule provides:  "Requests for rulings in the trial of a case shall be in writing and shall be presented to the court before the beginning of closing arguments, unless consent of the court is given to present requests later."

[2] On three prior occasions, Kiera had gotten loose from Lovell's property and wandered onto the defendant's property across the street and two houses down from the farm.  The first time Kiera got loose was soon after Lovell's family arrived; while they were unpacking, one of the children had left a door open.  The defendant returned the dog that time.  He "appeared on [Lovell's] doorstep, very angry, holding [her] dog by [the] collar;" he yelled at Lovell for letting her dog run loose, telling her that the town had a leash law.  He refused to accept Lovell's apology.  Within a few days, Kiera got loose again; that time the defendant returned Kiera, "dragging her by the collar back, and just walked right into [Lovell's] house" without knocking.  Again, Lovell apologized and explained that her family had just moved in; that they were getting settled and were planning to put up a fence.  Approximately one week later, the dog got loose a third time from a dog run in Lovell's back yard.  Lovell was returning home when she saw Kiera in front of the defendant's house; Lovell stopped her truck and the dog hopped in.  Before Lovell could drive on, the defendant "ran out of his house and ran in front of [her] car, and stopped in a very aggressive stance, sort of . . . like a wrestler."

their truck to search for the dog; they found her a short distance away standing uncharacteristically still in the middle of the street in front of the defendant's house.[3]  When they drove up, Lovell noticed the dog was holding up her hind leg.  Whereas, normally, she would have jumped into the truck, this time, she had to be lifted into the truck to be brought home.  Once there, Lovell noticed drops of blood on the kitchen floor and, when she looked closer, she found a small, round hole in the dog's hind leg with blood coming from it.  The dog whined and tried to lick the wound and was unable to walk.

The next day, Lovell brought the dog to a veterinarian.  An X-ray showed a pellet lodged deep in the dog's left flank, very close to the bone.  The dog was returned to the veterinarian two days later for surgery to remove the pellet; the doctor halted the surgery after deciding that to continue would risk further nerve damage.  The veterinarian referred Lovell to a surgeon.  The surgeon also determined that surgery would be too risky, and the pellet remained in the dog's leg.  The dog was given pain

---

According to Lovell, "he was instantly red in the face, screaming at [her] and he said, "if I see her loose again, I will shoot her dead."  As noted, each of these three incidents occurred in late October or early November; there were no further incidents until the one at issue, approximately two months later.

[3] This breed of dog is generally known as a livestock guardian; its normal behavior is to be constantly "scoping, getting a lay of the land" not staying still.

medication for about one week after the visit.  The surgeon opined that "even though the dog wasn't complaining, I'm sure that it hurt from having the pellet in the leg and from the surgery."

For the next week, Lovell kept the dog in the house, rather than outside in the barn; the family brought her food to her because "she was unable to walk.  She remained [lying] down for the next week."  The dog showed "great pain" and the injury was "very much bothering her"; she was "up all night whining for days."  As a result of the injury, the dog has a permanent limp although she can still perform her function of guarding the family's livestock.

The defendant testified that, when he saw the dog in his yard for the fourth time, he shot her with a .22 caliber air powered pellet gun, from a distance of about fifty to sixty feet away.  He hit the dog with one shot exactly in the spot where he aimed, in an attempt to "sting" her and scare her from his yard. He did not call the town dog officer.[4]  The defendant testified that, while the dog was not aggressive in any way, he shot her in an attempt to protect his wife, who suffered from multiple sclerosis.  He stated that, because of his wife's medical condition, she has difficulty lifting her feet up and, instead,

---

[4] The defendant testified that he had previously called the town animal control officer when Kiera was on his property.

slides her feet when she walks; if she lifts her feet "it's just as likely she's going to fall to one side or the other." The defendant had used a snow blower to create paths in the snow so that his wife could exercise, but he was concerned that dog feces on the paths might make it difficult for her to do that; photographs of feces in the defendant's yard were admitted in evidence. The defendant's wife had fallen a number of times in the time leading up to the incident, although there was no evidence that any of her falls were related to dog feces. In addition, at some point after the incident, the defendant left a message on Lovell's telephone voicemail, apologizing for shooting the dog and offering to pay the medical bills.

At the close of evidence, the defendant submitted a written request for rulings pursuant to Mass. R. Crim. P. 26. The judge accepted rulings numbered one through eight, but denied rulings numbered nine through eleven. At the end of the trial, the judge found the defendant guilty, and ordered, among other things, that the defendant be placed on administrative probation and pay restitution for the cost of the veterinarian expenses.

Discussion. The defendant's principal argument is that, in shooting the dog, he "pursued a lawful purpose and his intent was justifiable." If so, he contends, "his actions do not fit within the definition of 'cruelty' in G. L. c. 272, § 22." He also argues that three of his requests for rulings of law,

numbered nine, ten and eleven were wrongfully denied. The three requests at issue were:

"9. The defendant's purpose, to scare the dog off his property and to discourage its return, is a lawful purpose.

"10. The defendant's intent to ensure his wife's safety from falls due to the dog's presence on the property was justifiable in light of his wife's vulnerability caused by her medical condition.

"11. The pain inflicted by the defendant shooting the dog in the rump once with a pellet gun from a distance of about [fifty] feet for a lawful purpose and with justifiable intent does not fit within the meaning of 'cruel' under G. L. c. 272, § 77."

Requests for rulings under rule 26 are applicable to jury-waived trials in the District Court.[5] They are "intended to secure for the purpose of review a separation of law from fact in cases where the trial judge acts both as factfinder and applier of law." Commonwealth v. Kingston, 46 Mass. App. Ct. 444, 448 (1999), quoting from Reporters' Notes to Rule 26, Mass. Ann. Laws, Rules of Criminal Procedure, at 441 (Law. Co-op. 1979). See also Reporters' Notes to Rule 26, Mass. Ann. Laws, Rules of Criminal Procedure, at 1627 (Lexis Nexis 2015) (Reporters' Notes). Although case law regarding requests for rulings of law generally has arisen in the context of civil litigation, the rule also applies to criminal cases. Reporter's

---

[5] Rule 26 also applies to jury-waived trials in the Superior Court, the Boston Municipal Court, and all delinquency and youthful offender proceedings in the Juvenile Court. Cypher, Criminal Practice & Procedure § 38:1 (4th ed. 2014).

Notes to Rule 26.  See Cypher, Criminal Practice & Procedure § 38:3 (4th ed. 2014) (Cypher).  Rule 26 requests are to be made for rulings of law only, and the judge is not required to honor requests for findings of fact.  See Stella v. Curtis, 348 Mass. 458, 461 (1965); Reporter's Notes, supra.  See also Cypher, supra at § 38:6.  "The request is a request for a finding of fact if it calls for the application of the reasoning powers of the judge as to the facts or involves weighing of evidence." Ibid.  Cf. Davis, Malm, & D'Agostine, P.C. v. Lahnston, 82 Mass. App. Ct. 254, 258 (2012).

In this case, each of the first eight rulings stated principles of law, with citations to supporting case law.[6]

---

[6] The first eight requests were:

"1.  Cruelty as used in G. L. c. 272, § 77, is 'severe pain inflicted upon an animal . . . without any justifiable cause.'  Commonwealth v. Zalesky, 74 Mass. App. Ct. 908, 909 (2009), quoting Commonwealth v. Lufkin, [7 Allen] 579[, 581] (1863).

"2.  Proof of cruelty is accomplished if the evidence shows that the [d]efendant 'intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain.'  Zalesky, [supra] at 909.

"3.  The motive of intending to inflict injury or suffering is not, by the terms of the statute, made an essential element of the offence.  Lufkin, [supra] at 581.

"4.  Other cases, suggested in Lufkin[, supra] at 581, where no purpose of 'the gratification of a malignant or vindictive temper' is shown to exist, but are within the 'intent as well as the letter of the law,' are: 1) 'cruel beating or torture for the purpose of training or

Requests numbered nine through eleven do not state principles of law; each of those requests is a summary of the facts argued by the defendant in his defense.  Because the judge has broad discretion in instructing on the law of the case, we consider whether the judge abused her discretion in striking rulings

---

correcting an intractable animal;' 2) 'pain inflicted in wanton or reckless disregard of the suffering it occasioned and so excessive in degree as to be cruel;' and 3) 'torture inflicted by mere inattention and criminal indifference to the agony resulting from it, as in the case of an animal confined and left to perish from starvation . . . .' Lufkin,[supra].

"5.  The pertinent language of G. L. c. 272, § 77, for this case reads as follows:  'Whoever . . . cruelly beats . . . an animal, or causes . . . an animal to be . . . cruelly beaten . . . shall be punished.'

"6.  The motive of a person who inflicts pain on an animal may be material to the issue of whether the acts of the defendant are criminal.  Lufkin, [supra] at 582.

"7.  'Pain inflicted for a lawful purpose and with a justifiable intent, though severe, does not come within the statute meaning of "cruel."' If one drives 'a horse at a rate of speed most distressing to the brute, when the object is to save human life, for example, or to attain any other object of adequate importance, may yet be lawful.['] Lufkin, [supra].

"8.  The Town of Hatfield By-Laws, §2.07: Dog Regulations, states:

"'a) No person shall allow a dog of which he is owner or keeper:

"'i. to go beyond the confines of his property unless the dog is held firmly on a leash;

"'ii. by biting, barking, howling, or in any other manner to disturb the peace or quiet of any neighborhood or endanger the safety of any person.'"

numbered nine, ten, and eleven.  See Commonwealth v. Williams, 53 Mass. App. Ct. 719, 720 (2002).  Compare Commonwealth v. Saletino, 449 Mass. 657, 667 (2007) ("decision whether to provide a missing witness instruction to the jury is within the discretion of the trial judge, and will not be reversed unless the decision was manifestly unreasonable").

Here, we are satisfied that each of the requests for rulings denied by the judge was a request for a finding of fact, calling upon the judge as factfinder to weigh the evidence presented at trial.  Such rulings are clearly outside the scope of rule 26, and the judge did not abuse her discretion in denying them.  See Cypher, supra at § 38:6.  See also Williams, supra.

We next consider the evidence, "together with permissible inferences from that evidence, in the light most favorable to the Commonwealth, to 'determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Walker, 68 Mass. App. Ct. 194, 198 (2007), quoting from Commonwealth v. Cordle, 412 Mass. 172, 175 (1992).  "The governing statute, G. L. c. 272, § 77, as appearing in St. 1977, c. 921, § 2, provides:  'Whoever . . . cruelly beats, mutilates or kills an animal . . . shall be punished . . . .'  'Cruelty in this context is "[s]evere pain inflicted upon an animal . . . without any justifiable cause.'

Commonwealth v. Lufkin, 7 Allen 579, 581 (1863)." Commonwealth v. Linhares, 80 Mass. App. Ct. 819, 823-824 (2011).

"'Specific intent to cause harm is not required; "decisional law makes clear that in circumstances involving the direct infliction of pain on an animal all that must be proved is that the defendant 'intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain.'" Commonwealth v. Erickson, [74 Mass. App. Ct.] 172, 177 (2009), quoting from Commonwealth v. Magoon, 172 Mass. 214, 216 (1898).' Commonwealth v. Zalesky, 74 Mass. App. Ct. 908, 909 (2009). 'The defendant's guilt did not depend upon whether he thought he was unnecessarily cruel, but upon whether he was so in fact.' Commonwealth v. Magoon, supra." Commonwealth v. Linhares, supra at 824.

In this case, the defendant testified that he intended to shoot the dog and, in fact, hit her exactly in the spot where he aimed. Whether the defendant intended only to "sting" the dog in order to discourage her return to the defendant's property is immaterial. See Commonwealth v. Erickson, supra at 177 (necessary that the defendant "intended the act to occur which constitutes the offense"). Shooting the dog and having the pellet lodge in her hind leg, deep into the muscle and close to the bone, unnecessarily, and unjustifiably, caused severe pain to the animal to the point where she was unable to walk, was

kept up at night for several days whining, remained lying down for a week, with her food brought to her, and required confinement to the house for approximately months until she had recuperated fully. In addition, although it was unsuccessful, the dog required surgery, was given pain medication, and still has a limp, all as a consequence of the defendant's admitted actions.

While the defendant's concern for his wife's safety is understandable, even admirable, he had legal alternatives to shooting the dog, including monitoring his property for animal feces when his wife was planning to walk, and calling the town dog officer, as he had done before. In addition, as he testified, he aimed and fired directly at the dog, hitting her in precisely the spot he intended.

On these facts, we are satisfied that the judge reasonably could have found that the defendant "intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain, and so were unnecessarily cruel." Commonwealth v. Zalesky, supra at 909.

Judgment affirmed.