## COMMONWEALTH *vs.* GEORGE M. CURRY.

Norfolk.    November 30, 1889. — January 2, 1890.

Present: FIELD, DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Cruelty to Animals — Intoxication — Statute.*

On a complaint under the Pub. Sts. c. 207, § 52, for unnecessarily failing to provide a horse with proper food, drink, and protection from the weather, the defendant may be convicted upon evidence that he unnecessarily left a horse harnessed to a carriage in the woods, where it remained all night uncared for, and actually without food and drink for more than twenty-four hours, except what it obtained by browsing.

At the trial of the complaint there was evidence that the defendant hired a horse and carriage in the forenoon to go to a certain place and return; that, as he did not return, the owner went the next day in search of them, and at another place found the defendant, who said he had left them the night before at a farmer's barn in the country, but he did not know exactly where; that, upon their both going to the house of the farmer, the defendant inquired if he had not left a horse and carriage in the farmer's barn the night before, and was answered in the negative; and that a further search revealed them in the woods a mile and a half from the highway. The defendant refused to state why he went where he did, otherwise than by saying that "it was the same business as others went on," and accounted for leaving the horse and carriage in the woods by saying that he got "bewildered," but denied having drunk any intoxicating liquor. At the close of the charge, the presiding judge refused to rule, as requested by the defendant, that there was no evidence of the intoxication of the defendant, and that in order to convict the defendant the jury must be satisfied that the suffering of the horse must have been such as to amount to cruelty. *Held,* that the defendant had no ground of exception.

COMPLAINT on the Pub. Sts. c. 207, § 52,* alleging that the defendant at Weymouth, on September 8, 1887, unnecessarily failed to provide a horse, hired by him and in his custody, with

---

* This section is as follows: "Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or kills an animal, or causes or procures an animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or killed, and whoever, having the charge or custody of an animal, either as owner or otherwise, inflicts unnecessary cruelty upon it, or unnecessarily fails to provide it with proper food, drink, shelter, or protection from the weather, shall be punished by imprisonment in the jail not exceeding one year, or by fine not exceeding two hundred and fifty dollars, or by both such fine and imprisonment."

proper food, drink, and protection from the weather for the space of twenty-four hours thereafter.     Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions in substance as follows.

There was evidence tending to show that the defendant, at the time and place alleged, in the forenoon hired a horse and carriage of one Spilstead to go to South Weymouth, a distance of three or four miles ; that about noon he started to go, and was to return within two or three hours ; that he did not return upon that day, and the next morning Spilstead went to Nantasket Beach, a distance of nine miles, and there found the defendant at a livery stable ; that the defendant said that he had left the horse and carriage at a farmer's barn in the country the night before, but where he did not exactly know ; that the defendant and Spilstead together went in search of the horse and carriage, first going to the house of one Warwick, of whom the defendant inquired if he had not left a horse in his barn, and was answered in the negative ; that, upon further search being made, the horse and carriage were found in the woods, a mile and a half from the highway, near a cart-path, and about a mile from Warwick's house ; that the horse was found in a grove of young oaks, upon which he had evidently browsed ; that the horse did not appear to have suffered from exposure or hunger, and when taken to Warwick's barn drank but half a pail of water ; that it did not appear lean or gaunt, as if it had suffered from want of food or water ; that the horse did not show any signs of having been driven hard, or of having been in a sweaty condition when left in the woods the night before ; that that night was clear and not cold, without any frost ; and that Spilstead and the defendant thereupon drove the horse home, a distance of twelve miles, with no other food than grass found by the roadside. The defendant testified that he went to Nantasket Beach on business, and there caused the horse to be put up and fed ; that towards night he started for home, lost his way in the woods, got " bewildered " and could not find his way out; and that he left the horse and carriage in the woods and walked to that place for assistance.     Upon being asked what business took him to Nantasket Beach, he replied that it was the same business that others went on, and refused to give any other answer, but

denied that he had drunk any intoxicating liquor. The evidence showed that the horse had been without food and drink for more than twenty-four hours when found, except what food it obtained in the woods.

The judge refused to rule, as requested by the defendant, that the jury would not be authorized to convict the defendant upon the complaint and evidence, and the defendant excepted. The judge instructed the jury " that the government must prove beyond a reasonable doubt that the defendant unnecessarily failed to provide said horse with proper food, drink, shelter, and protection from the weather ; and if the government had proven that, it would authorize the jury to return a verdict of guilty ; . . . that if they were satisfied from all the evidence that the defendant was intoxicated at the time, and that was the cause of his driving into the woods, and that caused him to leave the horse unnecessarily without proper food, drink, shelter, or protection from the weather, intoxication would not be an excuse for so doing ; and that it was a question of fact for the jury to determine whether or not, considering all the evidence, the defendant unnecessarily failed to provide for the horse as the statute required."

At the conclusion of the charge, the defendant asked the judge to rule " that there was no evidence of the intoxication of the defendant, and that in order to convict the defendant the jury must be satisfied that the suffering of the horse must have been such as to amount to cruelty, in order to authorize the jury to convict." The judge refused so to rule, and the defendant excepted.

The jury returned a verdict of guilty ; and the defendant alleged exceptions.

*A. E. Avery,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. A. Wyman,* Second Assistant Attorney General, for the Commonwealth.

FIELD, J. The first exception is to the refusal to rule that the evidence would not warrant the jury in convicting the defendant. Unnecessarily leaving a horse harnessed to a carriage in the woods, where it remains all night uncared for, when it appears that the horse was actually without food and drink for more than twenty-four hours except the food which it obtained in the

woods, is evidence of a failure to provide the horse with proper food and drink. Such treatment has some tendency to injure a horse, if not to cause it some suffering.

The rulings requested "at the conclusion of the judge's charge" were, we think, rightly refused. The Legislature has, in the Pub. Sts. c. 207, § 52, prohibited different things, each of which has some tendency to cause suffering, injury, or death to an animal. The defendant was charged with unnecessarily failing to provide a horse in his custody with proper food, drink, and protection from the weather, and this in terms is made an offence by this section of the statute. The section also prohibits the infliction of unnecessary cruelty upon an animal. It cannot be held, as matter of law, that the two clauses mean the same thing, or that the meaning of one clause is to be determined by the meaning of the other. In each clause the words used are common English words, and it must be taken that they are used in their ordinary signification. As we interpret the words, the statute does not require that the failure to provide proper food, drink, and protection must be such that on account of it the animal has cruelly suffered.

Whether the defendant was intoxicated at the time he left the horse in the woods was only material in determining the question whether he unnecessarily left the horse there. The defendant testified that he got "bewildered." If he got bewildered because he had voluntarily become intoxicated, the fact that he got bewildered would not be a defence. If he got bewildered from other causes, the fact might be a defence. From all the evidence, we think that the jury could properly find, either that the defendant was not bewildered, or if he was, that intoxication was the only reasonable explanation of his condition.

*Exceptions overruled.*