COMMONWEALTH *vs.* HEIDI K. ERICKSON.

No. 06-P-1418.

Suffolk. April 8, 2008. - April 30, 2009.

Present: RAPOZA, C.J., GRASSO, & COHEN, JJ.

*Animal. Search and Seizure,* Emergency. *Intent.*

A Boston Municipal Court judge did not err in denying the criminal defendant's motion to suppress evidence obtained during a warrantless entry into her apartment, where the police officer who entered her apartment was justified in his belief that the tenant could be inside the apartment and was injured, dying, or dead. [173-176]

This court concluded that the portion of G. L. c. 272, § 77, under which the criminal defendant was convicted required proof of only a general intent, i.e., that the defendant intentionally failed to provide a sanitary environment or proper nutrition for an animal [176-177]; further, this court concluded that this portion of the statute did not require proof of harm or risk of harm [178].

COMPLAINTS received and sworn to in the Central Division of the Boston Municipal Court Department, one on July 1, 2003, and five on October 7, 2003.

A pretrial motion to suppress evidence was heard by *Annette Forde,* J.; the cases were heard by *Raymond G. Dougan, Jr.,* J., and a motion for a new trial, filed on October 24, 2006, was also heard by him.

*Elizabeth Caddick* for the defendant.

*Janis DiLoreto Noble,* Assistant District Attorney, for the Commonwealth.

RAPOZA, C.J. Following a bench trial, the defendant was found guilty of six counts of animal cruelty involving one dog and five cats. See G. L. c. 272, § 77, as amended through St. 1989, c. 534. The judge ruled that the defendant had failed to provide a sanitary environment for the animals and, in addition, had failed to provide proper nutrition for the dog. We affirm the

convictions and also the order denying the defendant's motion for a new trial.

The defendant raises a multitude of claims in this consolidated appeal from her convictions and the denial of her motion for a new trial, all of which we have considered and conclude have no merit.[1] We focus here solely on the two issues that warrant more detailed discussion: (1) the correctness of the motion judge's order denying the defendant's motion to suppress evidence discovered during the warrantless entry into the defendant's home; and (2) the proper interpretation of the provisions of the animal cruelty statute under which the defendant was convicted. We also review the defendant's related claim that the Commonwealth failed to meet its burden of proof beyond a reasonable doubt.

1. *Motion to suppress.* Before trial began, the defendant moved to suppress the evidence obtained during the search of her home. After conducting a two-day evidentiary hearing, the motion judge (who was not the trial judge) denied the motion to suppress in part and allowed it in part. We summarize her findings, which were amply supported by the evidence.

On April 27, 2003, a Boston police officer was dispatched to an apartment building to respond to a complaint of a barking dog. Upon his arrival, at approximately 5:20 P.M., the officer learned from a resident of the building that the dog had been barking in a rear apartment since about 3:00 A.M. The resident also told the officer that there was a smell emanating from the area of that apartment, which belonged to a tenant (the defendant)

---

[1]Represented by new counsel on appeal, the defendant claims that (1) her motion to suppress should have been allowed; (2) the evidence was insufficient to prove wilful and knowing conduct, which she claims is required under the animal cruelty statute, G. L. c. 272, § 77; (3) the evidence was insufficient to sustain a conviction for animal cruelty even under the wanton and reckless standard applied by the trial judge, because, she argues, there was no proof of harm to the animals; and (4) trial counsel was ineffective because she failed to investigate a defense and present evidence that the dog's low weight was not the result of neglect. The defendant makes the additional claims, pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201, 208-209 (1981), that trial counsel was ineffective in no less than some twenty-eight instances and that the defendant was denied her right to proceed pro se.

This court also permitted the defendant to file a *"Moffett* reply brief," but denied her request to be permitted time, in addition to that allowed to her appellate counsel, to argue orally the issues she raised in her pro se brief.

whom he had not seen for quite some time. When the officer went to the rear of the building to investigate, he saw through a partially opened window a big dog who appeared hungry and emaciated. He could see boxes and garbage scattered throughout the room. The stench emanating from the apartment raised the officer's concern that a decaying body might be inside. His concerns were heightened when no one responded to his yelling and banging on the door with his baton.

Because the door was locked and there was a grate covering the window, the officer had to summon the fire department to remove the grate. Once the grate was pried off, he and a firefighter entered the apartment through the window. He also summoned the city's animal control unit, which later called for the assistance of the Boston inspectional services department (ISD).

The dog, a Great Dane, was lying crouched against the wall, surrounded by feces. The animal was severely emaciated, and his bones were visible under his skin. The officer and the firefighter made their way to the next room, walking through the feces-covered area. They continued calling out to see if anybody might be there, while at the same time looking for a dead body. The apartment was a mess, with boxes, garbage, and trash everywhere. The police officer testified that the smell was so foul in the kitchen area that he became lightheaded and had to step outside to get some air. When the officer returned to the apartment he continued to look for signs of life. In a room next to the kitchen area, he found several cats barely alive.

Upon their arrival, the ISD officers opened the refrigerator and the kitchen cabinets and found forty-nine to fifty-one animal carcasses and containers holding what appeared to be animal parts or organs. They saw blood on the floor and in the refrigerator.

The dog, who could not walk on its own, and the live cats were all removed from the apartment and transported to Angell Memorial Hospital for treatment.

Relying on *Commonwealth* v. *Snell*, 428 Mass. 766, 774-775, cert. denied, 527 U.S. 1010 (1999), the motion judge concluded that the warrantless entry was justified because there was reasonable cause to believe that an emergency existed at the time of entry. Specifically, the judge found that "[i]n this instance, the officer had adequate reasons, based both on the reports he

received from the tenant and on his own observations, to believe that there might be an emergency of significant proportions at play in the apartment. The fact that there was no injured, dead, or dying human being within the apartment does not alter the officer's obligation to inquire promptly under the circumstances."[2]

The judge committed no error. The emergency exception "applies when the purpose of the police entry is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life or property. . . . For the exception to apply, the burden of proof is on the Commonwealth to show that the warrantless entry falls within the exception and that there were reasonable grounds for the . . . police to believe (an objective standard) that an emergency existed." *Commonwealth* v. *Snell*, *supra* at 774-775, quoting from *Commonwealth* v. *Bates*, 28 Mass. App. Ct. 217, 219-220 (1990).

Here, it is clear that the officer was justified in his belief that the tenant could be inside the apartment and was injured, dying, or dead. That the officer thought there was a possibility that someone might still be alive in the apartment was clearly evident from his banging on the door before entering and his continuing to yell as he went from room to room trying to find anyone who might be alive.

The defendant parses the evidence too finely in suggesting that it did not support proof of an exigency. First, the defendant contends that the officer's concern that someone might be dead in the apartment "should have reasonably been vanquished when [he] saw the dog feces surrounding the dog *before he entered the apartment* [emphasis in original] [because] [i]t is objectively *unreasonable* [emphasis supplied] to conclude that a dog feces smell . . . is a smell caused by a dead body." The argument ignores the reality that there were in fact dead bodies in the apartment, not merely dog feces, to say nothing of the

---

[2]The judge ordered the suppression of "[p]hotographs and all evidence relating to evidence seized from refrigerators, freezers, cabinets, and other closed containers within the apartment in question." This order resulted in the exclusion at trial of the evidence of the numerous animal carcasses and the related evidence found in the dwelling. Other challenged evidence, including items discovered upon entry that were in plain view and certain photographs taken of the condition of the apartment and the six animals, was not suppressed.

additional odor caused by the blood, cat urine, and cat feces that were also found.

Next, the defendant argues that even if the smell justified a belief that there was a dead body inside, that fact does not create an emergency justifying a warrantless entry. According to the defendant, in such circumstances nothing will be lost by waiting to obtain a warrant. As the motion judge properly determined, however, the officer's observations concerning the conditions of the apartment and the odor emanating therefrom also supported the belief that someone inside could be seriously injured or dying. The defendant's contention that the officer should have waited in these circumstances to obtain a warrant flies in the face of an officer's obligation to prevent the imminent loss of life, the basis for the warrant exception. See *Commonwealth v. Marchione*, 384 Mass. 8, 10-11 (1981).[3]

2. *The animal cruelty statute.* a. *Intent requirement.* The defendant argues that the animal cruelty statute requires proof of knowing and wilful conduct, not merely wanton and reckless conduct as the judge concluded, and that, in either case, the evidence was insufficient to establish the requisite intent. We agree with the Commonwealth that the portion of the statute under which the defendant was convicted requires proof of only a general intent. The heightened mental state of "knowing" and "willful" conduct was included by the Legislature only in two portions of G. L. c. 272, § 77, neither of which is at issue here, namely, (1) where a person "willfully abandons" an animal and (2) where someone "knowingly and willfully authorizes or permits [an animal] to be subjected to unnecessary torture, suffering, or cruelty . . . ." None of the other portions of the statute include this language. See *ibid.*

The portion of the statute applicable to the present case reads, "[W]hoever, having the charge or custody of an animal, either as owner or otherwise, . . . unnecessarily fails to provide it with proper food, drink, shelter, sanitary environment, or protection

---

[3]The defendant also argues that neither the dog's barking nor the observations of his condition permit a warrantless entry because the exception has not been extended to animals in Massachusetts. There is no need to reach this question because, as noted above, there was an objectively reasonable basis to believe that a human being in need of immediate assistance may have been inside the apartment, thereby justifying the entry.

from the weather . . . shall be punished . . . ." *Ibid.* Although no previous case has addressed the mens rea required under this portion of the statute, decisional law makes clear that in circumstances involving the direct infliction of pain on an animal all that must be proved is that the defendant "intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain." *Commonwealth* v. *Magoon*, 172 Mass. 214, 216 (1898). "The defendant's guilt did not depend upon whether he thought he was unnecessarily cruel, but upon whether he was so in fact." *Ibid.* The part of the statute under consideration here similarly does not mandate proof of a specific intent to cause harm. Rather, the statute simply requires that a defendant intentionally failed to provide a sanitary environment or proper nutrition for an animal.

This approach mirrors the modern-day definition of general intent. For example, instruction 3.04 of the Model Jury Instructions for Use in the District Court (1988) defines general intent as requiring proof that the defendant acted "intentionally," meaning "voluntarily and deliberately" and not accidentally. "It is not necessary that the defendant knew that [she] was breaking the law, but it is necessary that [she] intended the act to occur which constitutes the offense." *Ibid.* See, e.g., *Commonwealth* v. *Fuller*, 22 Mass. App. Ct. 152, 158-159 (1986), *S.C.*, 399 Mass. 678 (1987); *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 121-122 (1989).

Here, the animals were found, seemingly abandoned, lying in their own excrement in a stench-filled apartment littered with trash and an overflowing litter box; the dog was dehydrated and emaciated; and the cats looked sickly and had urine-stained and matted fur. There was a large bag of cat food on the floor with a rip in it from which the cats had been eating. These circumstances plainly permit the inference that the defendant intentionally failed to provide the animals with a sanitary environment and, in addition, failed to provide the dog with adequate food or drink. *Commonwealth* v. *Curry*, 150 Mass. 509, 511-512 (1890) (leaving a horse harnessed to a carriage in the woods for twenty-four hours was "evidence of a failure to provide the horse with proper food and drink" and established a violation of the animal cruelty statute).

b. *Whether unnecessary suffering or harm an element of proof.* The defendant also argues that the statute requires proof of harm or risk of harm and, in turn, that such proof was lacking here. The statute however, contains no such requirement. The defendant was convicted of failing to provide proper sanitary conditions and of failing to provide proper nutrition for the dog. More was not required. See G. L. c. 272, § 77 ("whoever, having the charge or custody of an animal, either as owner or otherwise, . . . unnecessarily fails to provide it with proper food, drink, shelter, sanitary environment, or protection from the weather . . . shall be punished . . ."). Even were such an additional requirement imposed, the Commonwealth demonstrated beyond a reasonable doubt that the treatment at issue here had some tendency to cause harm, injury, or suffering. See *Commonwealth* v. *Curry*, *supra* at 512 (failure to provide proper food and drink for a horse "has some tendency to injure a horse").

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*