NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

12-P-1811                                     Appeals Court

COMMONWEALTH vs. PATRICK DALY.

No. 12-P-1811.

Norfolk.     October 2, 2015. - August 18, 2016.

Present: Katzmann, Grainger, & Maldonado, JJ.

Animal. Dog. Constitutional Law, Vagueness of statute, Assistance of counsel. Due Process of Law, Vagueness of statute, Assistance of counsel. Evidence, Photograph. Practice, Criminal, Required finding, Instructions to jury, Assistance of counsel, New trial, Affirmative defense, Deliberation of jury. Defense of Others. Jury and Jurors.

Complaint received and sworn to in the Quincy Division of the District Court Department on February 23, 2011.

The case was tried before Diane E. Moriarty, J., and a motion for a new trial was heard by her.

Danielle M. Wood for the defendant.
Tracey A. Cusick, Assistant District Attorney, for the Commonwealth.

MALDONADO, J. The defendant appeals from a conviction of animal cruelty, following his jury trial in the Quincy District Court, and from the denial of his motion for a new trial after

an evidentiary hearing.  The defendant was sentenced to serve from two to two and one-half years in the house of correction, with one year committed and the balance suspended for three years with probation.  On appeal, the defendant asserts that the judge (1) erred in denying his new trial motion challenging the constitutionality of the animal cruelty statute; (2) improperly excluded photographic and testimonial evidence of the animal's aggressive behavior; (3) erroneously admitted an unduly prejudicial photograph of the deceased animal; (4) erred in denying his motion for a required finding; (5) incorrectly instructed the jury; and (6) erred in denying his new trial motion on the basis of ineffective assistance of his trial counsel.  We affirm.

Background.  The defendant was living in a duplex in Braintree with his then girl friend Joan Cummins, their four year old daughter, Jamie, and Cummins's pet dog, a Chihuahua. The dog was fourteen years old and weighed approximately eight pounds.  Cummins got him as a puppy for her now adult son.

According to Cummins, the dog had been "snippy" since he was a puppy.  Once, when Jaime was only eighteen months old, she was playing tug-of-war with the dog and he bit her face, requiring that she obtain stiches.  As a result of this incident, Cummins agreed to crate the dog at night and whenever else he became snippy with Jaime.

About midday on November 9, 2010, the defendant and Cummins were in the kitchen, and Jamie was alone with the dog in the living room. Jamie grabbed the dog's leash, which was attached to his collar. The dog barked, and Jamie cried out. The defendant, who had a direct view of the two, got upset and said "[the dog] bit [Jamie] again." According to Cummins, the defendant then charged at the dog, who ran and hid under the sofa. The defendant went after the dog. Cummins tried to stop the defendant from grabbing the dog, but he got hold of the dog's leash and took control of him. The defendant "flung the dog out" the open sliding door and onto the deck. Cummins became extremely upset; she was crying. The defendant, in the meantime, stated repeatedly the "dog bit her"; and "you like the dog better than you do your kid."

Cummins searched for the dog, whom she did not see on the deck. The deck is about twelve feet off the ground. Cummins descended the deck stairs and saw the dog on the ground. He looked at her, whimpered, cried, and then expired. Jamie told Cummins the dog had bitten her. Cummins saw a cut on Jamie's knuckle, and she put a band-aid on it.

Later that day, the defendant visited the police station to report an altercation he had had with Cummins's adult son. He spoke to Officer Bryan Adams. The defendant explained that Cummins's son came to the duplex upon learning of the dog's

demise, and then fought with the defendant over the dog's death. According to Adams, the defendant also told him that when he observed the dog bite his daughter, he simply "lost it"; he then chased the dog until he could grab the dog. The defendant further admitted to throwing the dog onto the deck and to the dog's "f[alling] down over the deck." The defendant indicated that he looked out and "could see that the dog had ran off into the woods," and that he "didn't see the dog after that."

Adams accompanied the defendant to the duplex. Walking down the driveway, Adams saw a young man sobbing over a bin containing a small dead Chihuahua. While indicating toward the defendant, the young man cried out he "killed my dog." Adams went into the apartment. The defendant remained outside with a police detective. In the apartment Adams encountered Cummins, Jamie, and the landlord, Richard Bottiglieri. Jamie showed no signs of trauma; she appeared bewildered but was not crying. Cummins was visibly upset and crying.

The defendant testified at his trial. He attested to throwing the dog onto the deck but asserted that he did it to protect his daughter. He also denied telling Adams that he had "lost it" or that he had seen the dog run into the woods.

Discussion. 1. Constitutionality of G. L. c. 272, § 77.

The defendant asserts the animal cruelty statute is vague and overbroad largely because it fails to define the term

"kills" in addition to failing to define "unnecessary cruelty" or "cruelly beat".[1]  Viewed in context and in conjunction with the case law, see Commonwealth v. Campbell, 415 Mass. 697, 700 (1993), the statute is sufficiently exacting.  It sets forth a perhaps "imprecise, but comprehensible normative standard so that [individuals] of common intelligence will know its meaning."  Commonwealth v. Orlando, 371 Mass. 732, 734 (1977).

The term "kills" appears in the portion of the statute that punishes whoever "cruelly beats, mutilates or kills an animal." Contrary to the premise upon which the defendant bases his argument, the adverb "cruelly" in this phrase applies to each of the subsequently listed verbs or elements of the crime.  See Commonwealth v. Daley, 463 Mass. 620, 624 (2012).  See also Flores-Figueroa v. United States, 556 U.S. 646, 647 (2009). This interpretation comports with both grammatical tenets and a commonsense statutory purpose by making clear that acts such as branding a steer (mutilating without cruelty) or medically putting an animal down (killing without cruelty), are not criminalized.  Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977) ("When a statute does not define its words we give them their usual and accepted meanings, as long as these

---

[1] In pertinent part, G. L. c. 272, § 77, as appearing in St. 1977, c. 921, § 2, provides:  "Whoever . . . cruelly beats, mutilates or kills an animal . . . shall be punished . . . ."

meanings are consistent with the statutory purpose.")  Moreover, the term "cruelty" has been explicated in our decisional law since at least 1863, and requires the infliction of severe or unnecessary pain upon an animal.  See Commonwealth v. Lufkin, 89 Mass. 579, 581 (1863); Commonwealth v. Magoon, 172 Mass 214, 216 (1898).  See also Commonwealth v. Zalesky, 74 Mass. App. Ct. 908, 909 (2009).  Accordingly, where, as here, the terms of the statute are sufficiently defined so as to alert a pet owner that he or she may not throw a dog on its leash onto a deck with force enough to cause the animal to fall off the deck, twelve feet to its death, we perceive no constitutional infirmity.

2.  Excluded evidence.  The defendant contends the judge improperly excluded from evidence, on the basis of its late disclosure in violation of pretrial discovery orders, the following evidence:  (a) photograph of Jaime's hand after the incident; (b) testimony from the defendant's landlord that on several recent occasions prior to the crime, the dog had bitten him, his daughter, and his granddaughter; and (c) testimony from the landlord that the police refused to listen to his account of what occurred immediately after the incident.

Trial judges possess wide discretion to determine appropriate sanctions for discovery violations.  Commonwealth v. Carney, 458 Mass. 418, 429 (2010).  "[T]he purpose of such sanctions must be remedial, not punitive."  Ibid.  Once a judge

determines that a defendant has violated a discovery order, "it is incumbent on the judge to fashion an appropriate remedy." Commonwealth v. Reynolds, 429 Mass. 388, 398 (1999). The judge must balance enforcement of the discovery rules against the defendant's right to present a defense. Ibid. Before imposing the severest sanction of preclusion of the late disclosed evidence (which the judge did here), the judge must make clear that she has considered (1) the prevention of unfair surprise; (2) evidence of bad faith in violation of the discovery order; (3) prejudice to the other party caused by the admission of the late disclosed evidence; (4) the effectiveness of less severe sanctions and (5) the materiality of the evidence to the case. Ibid.

It is clear from this record that in making her ruling, the judge emphasized the element of unfair surprise, remarking that such late disclosure was "unfair" to the Commonwealth and tantamount to trial by "ambush." It is less clear whether she took into consideration the several other required factors. Assuming, without deciding, that the judge erred in excluding the evidence without engaging in the proper balancing test, we nevertheless conclude that the defendant was not prejudiced.

It was not disputed at trial that the dog bit Jaime. Neither was the nature of the injury in dispute, which by all accounts was a minor cut and required no more than a small band-

aid.  A photograph depicting a band-aid on what would appear to be a minor injury would likely have only emphasized the insignificant nature of the injury and would have done nothing to bolster the defendant's theory of defense, i.e., that he was justified in coming to the aid of his daughter against the dog's attack.

We also see no prejudice arising from the exclusion of the testimony concerning the dog's prior bites on the landlord and his family.  The dog's history of biting had no bearing on the defendant's intent or state of mind and, therefore, was excludable.  Furthermore, even if the history was relevant, the landlord's anticipated testimony on this subject would have been cumulative because Cummins had testified to the dog's history of biting.  See Commonwealth v. Smith, 460 Mass. 385, 398 (2011) (exclusion of cumulative evidence rarely prejudicial error).

As to the evidence of what happened after the dog's demise, the defendant has failed to show how that evidence bore on the only contested issue in the case, namely, whether he was justified in grabbing and throwing an eight pound dog onto the deck.  Concluding that independent of any discovery violations, the proffered evidence was either excludable or weak, we fail to see that the defendant was prejudiced by the judge's ruling.

3.  Photograph of deceased dog.  We also see no merit to the defendant's claim that the judge should have excluded the

single photograph of the deceased dog in a plastic bin.  The photograph tended to show the size of the animal and the fact of its death (which was relevant to disproving justification and to proving the use of excessive force).  See Commonwealth v. Ramos, 406 Mass. 397, 407 (1990), quoting from Commonwealth v. Bys, 370 Mass. 350, 358 (1976) ("[I]f the photographs possess evidential value on a material matter, they are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury").

4.  Motion for a required finding.  The defendant argues that the Commonwealth failed to disprove that the defendant's actions were justified to protect his daughter.  See Commonwealth v. Cabral, 443 Mass. 171, 179-180 (2005).  Assuming that the defendant was entitled to rely on the defense of another, the defense requires the Commonwealth disprove that "(a) a reasonable person in the actor's position would believe his intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself."  Commonwealth v. Martin, 369 Mass. 640, 649 (1976).  "The reasonableness of the belief may depend in part on the relationships among the persons involved . . . .  The actor's justification is lost if he uses

excessive force, e.g., aggressive or deadly force unwarranted for the protective purpose." Ibid.[2]

Under the familiar standard set forth in Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), we review the evidence in the light most favorable to the Commonwealth. Here, the evidence showed that the defendant had control of the eight pound dog before he threw the dog onto the deck. Even the defendant admitted that he was holding onto the leash with the dog before he threw him. Once the defendant had obtained control of the small animal, any justification to act in a manner that would inflict further pain on the dog evaporated and sustained the Commonwealth's burden to disprove the defense. Commonwealth v. Martin, 369 Mass. at 649. The motion was properly denied.

5. Jury instructions and deliberations. A. Elements of the crime. The defendant argues that the following instruction failed to properly instruct the jury on the parameters of culpable conduct:

---

[2] Factors such as the "relative physical capabilities of the combatants, the characteristics of the weapons used, and the availability of maneuver room in, or means of escape from, the . . . area" are all factors the courts have considered in assessing the reasonableness of a defendant's force. See generally Commonwealth v. Kendrick, 351 Mass. App. 203, 212 (1996); Commonwealth v. Medina, 81 Mass. App. 525, 531-533 (2012).

"Whoever cruelly beats or kills, who -- whoever having the charge or custody of an animal either as an owner or otherwise, inflicts unnecessary cruelty upon it, shall be punished.  In order to prove the defendant guilty, the Commonwealth must prove beyond a reasonable doubt that the defendant cruelly beat or killed the animal without justification, or the defendant had charge or custody of the animal either as an owner or otherwise, and the defendant inflicted unnecessary cruelty upon it.  For the purposes of this law, to prove the defendant acted cruelly, the Commonwealth must prove beyond a reasonable doubt that the defendant committed acts that inflicted severe pain upon the animal without justification.  The Commonwealth need not prove that the defendant intended the consequences of his acts, but it must prove beyond a reasonable doubt that the defendant intentionally and knowingly did the acts which were cruel."

Unaided by a model instruction, the judge drew from the statute and decisional law describing the offense.  The first sentence of the instruction properly recites the relevant portion of G. L. c. 272, § 77.  See note 1, supra.  Decisional law has explicated this language, including that "[c]ruelty in this context is severe pain inflicted upon an animal . . . without any justifiable cause," language which the judge incorporated in her second and third sentences.  Commonwealth v. Zalesky, 74 Mass. App. Ct. at 909 (quotation omitted).  Decisional law has also made clear that proof of the offense only requires that "the defendant intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain."  See, e.g., Commonwealth v. Erickson, 74 Mass. App. Ct. 172, 177 (2009), cert. denied, 559 U.S. 1032 (2010); Commonwealth v. Szewczyk, 89 Mass. App. Ct. 711, 716 (2016).

Put differently, the defendant's guilt does not depend upon whether he thought himself to have acted without justification, but upon whether he did so in fact. See Commonwealth v. Magoon, 172 Mass. at 216; Commonwealth v. Zalesky, 74 Mass. App. Ct. at 909; Commonwealth v. Linhares, 80 Mass. App. Ct. 819, 824 (2011). The last sentence of the judge's instruction adds this concept, namely, that the crime is one of general intent. Commonwealth v. Erickson, supra at 176. We see no error in the instruction. Contrary to the defendant's claim on appeal, the judge did not leave key terms undefined.

To the extent the defendant argues the judge should have inserted the word "cruelly" before the word "beat" and again before the word "killed" when instructing the jury, we disagree. The word cruelly here modifies both verbs, as discussed, supra. Moreover, even if common sense did not dictate such an interpretation, immediately after the phrase "cruelly beat or kill" the judge made clear that the killing must be without justification, thus conveying precisely what is intended by the use of the word cruelly. See Commonwealth v. Zalesky, supra at 909. There was no error.

B. Defense of another and excessive force. The defendant argues (somewhat confusingly) that he should have been permitted to assert the justification defense stripped of any requirement that justification be based on a claim of the defense of another

with the accompanying limitation on the use of excessive force. See, e.g., Commonwealth v. Martin, 369 Mass. at 649; Commonwealth v. Arias, 84 Mass. App. Ct. 454, 465-468 (2013). The trouble with this theory is that the term justification in the criminal law is simply an overarching term for a group of affirmative defenses, and among these defenses is the defense of another. See ,e.g., Commonwealth v. Martin, supra at 646-647; Commonwealth v. Cabral, 443 Mass. at 178-179. See generally Model Penal Code § 3.01, et seq. (1985). Thus, the defendant's claim of justification in this case was identical to his claim of defense of another.

More importantly, the "label of affirmative defense does not relieve the Commonwealth of its burden of proof," as the defendant suggests. Commonwealth v. Vives, 447 Mass. 537, 541 (2006). Because the circumstances related to a defense of justification are peculiarly within the knowledge of the defendant -- in this case the defendant's explanation for throwing the dog -- the defendant bears the burden of raising the defense. Commonwealth v. Cabral, 443 Mass. at 180-181. Once raised, however, the Commonwealth must prove beyond a reasonable doubt that the defendant was not legitimately defending another. Ibid. This allocation of the burden of proof does not run afoul of the constitutional mandate; that

burden was correctly placed on the Commonwealth in this case. Commonwealth v. Vives, supra at 541.

The defendant also argues that the jury should not have been instructed on the defense of another because it only applies to defending another against an attack by a human being, not an animal, which he claims is merely property.  While there is no precedent in Massachusetts on this point, the same rationale that resulted in the adoption of defense of another in Massachusetts suggests that the law of the Commonwealth ought not to "mark as criminal those who intervene forcibly to protect others" from an attack by an animal, provided that excessive force is not used.  See Commonwealth v. Martin, 369 Mass. at 648-649.[3]

In any event, the defendant cannot be heard to complain that the jury were improperly instructed on the defense of another and the use of excessive force where the defendant invited the instruction by claiming his actions were justified by the need to protect his young daughter.  See Commonwealth v. Knight, 37 Mass. App. Ct. 92, 99-100 & n.2 (1994) ("defendant on appeal bears a heavy burden in attempting to have his conviction

---

[3] There are other instances where legal principles have been applied to protect animals.  For example, courts have permitted warrantless searches under the umbrella of the exiting emergency aid exception to the warrant requirement in order to provide for immediate assistance "to protect nonhuman animal life." Commonwealth v. Duncan, 467 Mass. 746, 753 (2014).

overturned" in case of invited error).  Absent the instruction,
the defendant would have been deprived of the main thrust of his
defense.[4]

The defendant argues that the judge erred in instructing on
excessive force because the attack here was by an animal rather
than a person.  We need not answer the broader question whether
the excessive force limitation is applicable to all cases
involving a defense against an animal attack because under the
circumstances presented here, it was not inappropriate to give
the instruction.  The defendant still had the ability to present
his defense.[5]

---

[4] We also see no merit to the defendant's assertion that the
burden of proof shifted onto him.  The crime of animal cruelty
is a general intent crime.  The Commonwealth was required to
prove that the defendant acted intentionally rather than
accidentally.  His claim that he was justified to defend
another, as noted above, did not improperly shift the burden to
him.  Commonwealth v. Erickson, supra at 176; Commonwealth v.
Vives, supra at 541.

[5] The judge instructed as follows:

"A person cannot lawfully use more force than necessary in
the circumstances to defend one's self or another.  How
much force is necessary may vary with the situation and
exactness is not always possible.  You may consider whether
the defendant had to decide how to respond quickly under
pressure and the Commonwealth may prove that the defendant
did not act in self-defense or the defense of another by
proving beyond a reasonable doubt that the defendant used
clearly excessive and unreasonable force.  You may also
consider any evidence about the relative size and strengths
of the parties involved and where the incident took place
among other evidence that you have before you.  It is for
you to decide based on all of the evidence, whether the

C.  Written and supplemental instructions.  We see no merit
to the defendant's claim that the judge erred when she did not
include among the written instructions she gave to the jury,
pursuant to their request, the instructions for direct and
circumstantial evidence.  Commonwealth v. Guy, 441 Mass. 96, 108
(2004) (no error where judge gave the jury a written outline of
the elements of the crime, over the defendant's objection).  Nor
is relief required because the judge gave a supplemental
instruction on excessive force, but did not remind the jury that
the instructions should be considered as a whole in conjunction
with the main charge.  Commonwealth v. Green, 55 Mass. App. Ct.
376, 383 n.8 (2002).

D.  Jury deliberations.  At the end of the first day of
deliberations the jury reported to the judge that they could not
reach a verdict.  The judge determined that their deliberations
had not yet been due and thorough, and released them, asking
them to return the following morning.  That decision was well
within the judge's discretion.  See G. L. c. 234, § 34;
Commonwealth v. Winbush, 14 Mass. App. Ct. 680, 682 (1982).
When the jurors returned to court and resumed their
deliberations the following day, it appears that they wrote on

---

defendant used excessive force."  In large part this
instruction is taken from Criminal Model Jury Instructions
for use in the District Court, Instruction 9.260 (2009).

the verdict slip that they could not come to a unanimous decision, but then scratched that notation out and replaced it with a finding of guilty, which they reported in open court. We agree with the Commonwealth that the scratched endorsement on the verdict slip is of no consequence given the unequivocal verdict that the jury voiced on the record. Commonwealth v. Powers, 21 Mass. App. Ct. 570, 571, 574-575 (1986).

6. Ineffective assistance of counsel. The defendant made a claim of ineffective assistance of counsel in his motion for a new trial. The motion judge, who also had been the trial judge, held an evidentiary hearing on the motion at which the defendant's landlord, defense trial counsel, and the defendant all testified. The judge denied the motion, and as she presided at trial, we afford her decision "special deference." Commonwealth v. Pillai, 445 Mass. 175, 185 (2005), quoting from Commonwealth v. Zagrodny, 443 Mass. 93, 103 (2004).

The two-part test for ineffective assistance of counsel is familiar, that is "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The motion

judge determined that the claimed errors went to the issue of the dog's viciousness as a justification for the defendant's actions and concluded that any additional evidence on this issue "would not have substantially aided the defense."

Specifically, the defendant faults counsel for failing to exclude testimony from the police officer that he "formed the opinion that the dog was in fact thrown over the railing by the defendant."  Assuming without deciding that counsel could have successfully moved to exclude that opinion testimony, the error, if any, did not deprive the defendant of an otherwise available, substantial defense.  The testimony merely summarized what could be fairly drawn from the uncontested evidence -- that is, that the defendant threw the dog onto the deck with force enough to cause its fall and resulting death.  Contrary to the defendant's assertion, the prosecutor's summation comment that the defendant "threw [the dog] off the balcony" was not based exclusively on the officer's unchallenged statement.  The remark drew from a far broader swath of evidence, and was fair argument based upon the evidence.  See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987); Commonwealth v. Dinkins, 415 Mass. 715, 725 (1993).

Nor was counsel ineffective in her belief, as attested to at the motion hearing, that the photograph of Jaime's earlier injury, which counsel chose not to introduce in evidence, would have undercut the graphic testimony concerning the severity of

that injury.  See Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006), quoting from Commonwealth v. Adams, 374 Mass. 722, 728 (1978) (only tactical decisions "manifestly unreasonable when made" and prejudicial are subject to relief).  Finally the defendant's recasting of his arguments pertaining to the judge's exclusion of the photograph of Jamie's hand after the incident and the landlord's testimony fare no better as claims of ineffective assistance of counsel.  See Commonwealth v. Randolph, 438 Mass. 290, 295-296 (2002).  The judge did not err in denying the motion.

Judgment affirmed.

Order denying motion for new trial affirmed.