NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-818                                          Appeals Court

COMMONWEALTH  vs.  AMANDA L. BONIA.

No. 24-P-818.

Plymouth.      September 9, 2025. – January 15, 2026.

Present:  Rubin, D'Angelo, & Toone, JJ.

Animal.  Dog.  Practice, Criminal, Striking of testimony,
    Instructions to jury.  Intent.  Evidence, Intent.  Statute,
    Construction.

Complaint received and sworn to in the Wareham Division of
the District Court Department on February 1, 2022.

The case was tried before Edward H. Sharkansky, J.

Meghan K. Oreste for the defendant.
Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.

TOONE, J.  Following a jury trial in the District Court,

the defendant, Amanda L. Bonia, was convicted of animal cruelty

for having "unnecessarily fail[ed]" to provide her dog "with

proper food, drink, shelter, sanitary environment, or protection

from the weather," in violation of G. L. c. 272, § 77.  On

appeal, the defendant contends that (1) she was unfairly

prejudiced by two witnesses' inadmissible hearsay statements that were struck by the judge, (2) the judge erred by refusing to instruct the jury that the Commonwealth had to prove that the defendant intended the dog to suffer, and (3) there was insufficient evidence to support her conviction.  We affirm.

Background.  "Because the defendant challenges the sufficiency of the evidence presented, we summarize the facts the jury could have found in the light most favorable to the Commonwealth."  Commonwealth v. Tavares, 471 Mass. 430, 431 (2015).

Prior to June 2020, an animal control officer for the town of Wareham visited the defendant's house on several, though fewer than six, occasions to conduct welfare checks on the defendant's dog, Kayla.  During the visits, the officer saw "issues with proper shelter in bad weather, or lack of food."  Although they never met in person, the defendant told the officer by phone that she was Kayla's owner and "taking care" of her.  After the officer told the defendant she needed a shelter if Kayla was to be outside, the defendant obtained a "doggy igloo."  The officer also cited the defendant for failing to license the dog.  One of the defendant's neighbors testified that she sometimes saw Kayla struggling to walk or just lying outside.  A second neighbor testified that, during the three or four times he mowed the lawn at the defendant's house, Kayla was

always outside, without any food or water.  Each time he mowed at the house, he was there for about an hour.

On the afternoon of June 11, 2020, the first neighbor saw Kayla lying on the porch without any water.  The temperature was in the seventies, the defendant was not home, and Kayla did not appear to be breathing or able to lift her head.  The second neighbor also saw Kayla lying motionless on the porch that day, which he described as "kind of warm," with no food or drink nearby.  The animal control officer was dispatched to the defendant's house.  The officer initially thought Kayla was dead but then saw that she was alive but in distress:  "very emaciated, a lot of bones, just gasping for air."  After the officer called a colleague to assist, they carried Kayla in a blanket to a vehicle and transported her to an animal hospital in Buzzards Bay.  During transport, Kayla's "body functions appear[ed] to be stopping" as she "had vomited and defecated."

Records from the hospital described Kayla as a "mature adult female husky" that was actively seizing with paddling limbs and a chomping jaw.  The attending veterinarian assessed Kayla as having "[m]oderate to [s]evere" dehydration, "emaciated body condition," and "severe diffuse muscle wasting."  She was "unkempt" with mud, dirt, and "unidentifiable ectoparasites" in her coat and "hair loss over pressure points on [her] pelvis,

hind limbs, [and] shoulders."[1]  Due to her ongoing suffering, upon the officer's authorization, Kayla was euthanized.

The defendant testified on her own behalf at trial and denied that she had mistreated her dog.  The defendant testified that she bought Kayla, a husky-coyote mix, as a four month old puppy and that Kayla was fifteen years old when she died.  Kayla spent most of her time outside because she was "part coyote" and "that was her habitat."  Although the defendant got the doggy igloo after speaking with the animal control officer, Kayla never used it because she "didn't want to be in there" or in the house.  According to the defendant, she always left out a bowl of kibble so that Kayla could "eat whenever she wanted" and kept a bowl of water by a tree.  She walked Kayla several times a day in the summer.  About a week before June 11, 2020, Kayla became ill and stopped eating and drinking.  The defendant called the animal control offices in Wareham and Carver, but she was told that they did not euthanize elderly dogs.  She called a veterinarian's office, but she was told that Kayla would have to be examined before being euthanized, and the defendant could not afford the $500 fee.  When the defendant got home from work on

_____

[1] According to the records, the animal control officer reported that Kayla had been "left on the deck for the past 2 days," although it is not clear from either the records or the officer's testimony what basis she had to make that statement.

June 11, she was distraught to find Kayla missing and did not learn until days later that animal control officers had taken her away.

Discussion. 1. Struck statements. The defendant claims that she was unfairly prejudiced by two witness statements at trial, even though both were struck by the judge. First, after the prosecutor asked the first of the defendant's neighbors to testify whether she ever saw Kayla in distress, she responded, "I love my dogs, and the animal abuse going on was going on. And I knew . . . ." Defense counsel objected and moved to strike the statement, and the judge did so after a sidebar conference. Second, in response to a question about what he observed, the second neighbor volunteered, "There was a lot of complaints made about the dog." Again, defense counsel immediately objected and moved to strike the statement, and the judge did so.

"[I]n response to the jury's exposure to inadmissible evidence, the judge may 'correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant.'" Commonwealth v. Torres, 86 Mass. App. Ct. 272, 280 (2014), quoting Commonwealth v. Bryant, 447 Mass. 494, 503 (2006). "Only a compelling showing of ineradicable prejudice would cause us to conclude that the judge's instructions to disregard [a witness's]

testimony were inadequate." Commonwealth v. Thad T., 59 Mass. App. Ct. 497, 508 (2003). The defendant has made no such showing here. In his preliminary instructions, the judge explained that, if he struck an answer from the record, the jury "shouldn't consider it at all." After striking the first neighbor's statement, the judge instructed the jury that they "should not consider the comment that animal abuse was going on" because that was "essentially the question you have to answer today." Defense counsel did not object to this curative instruction or ask for an additional instruction, a mistrial, or any other relief. See Commonwealth v. Mullane, 445 Mass. 702, 712 (2006) (curative instruction following witness's improper testimony "was sufficient to remedy any prejudice against the defendant"). The judge also immediately struck the second neighbor's statement about complaints. "Jurors are presumed to follow a judge's clear instructions and disregard [struck] testimony." Commonwealth v. Auclair, 444 Mass. 348, 358 (2005).

2. Instruction on intent. Relying on Commonwealth v. Russo, 494 Mass. 356, 365 (2024), the defendant contends that the judge erred in refusing to instruct the jury that the Commonwealth had to prove that the defendant "intended Kayla to endure unnecessary suffering." The ruling in Russo is inapplicable, however, because it involved a different provision of the animal cruelty statute. The intent requirement for the

provision charged here required the Commonwealth to prove that the defendant intentionally failed to provide Kayla with proper food, drink, or shelter.

Massachusetts has a longstanding "public policy promoting the humane treatment of animals." Commonwealth v. Duncan, 467 Mass. 746, 752, cert. denied, 574 U.S. 891 (2014). In 1641, the Massachusetts Bay Colony established the first animal welfare statutes in North America. E.S. Leavitt & D. Halverson, Animals and Their Legal Rights: A Survey of American Laws from 1641 to 1990, at 1 (4th ed. 1990).[2] In 1836, the Legislature enacted the second animal cruelty statute in the United States and substantially broadened its protections in 1868. St. 1868, c. 212, § 1; St. 1836, c. 131, § 22. As drafted in 1868, the statute was divided into two sections. The first established a list of prohibited conduct against animals, and the second prohibited "knowingly and wilfully" subjecting an animal to unnecessary torture or cruelty. St. 1868, c. 212, §§ 1, 2. In 1972, these sections were consolidated in what is now G. L. c. 272, § 77, but the "knowingly and willfully" standard

_____

[2] The Massachusetts Body of Liberties prohibited "Tirranny or Crueltie towards any bruite Creature which are usuallie kept for man's use" and required that any "Cattel" being driven or led be given periodic rest and refreshment. Massachusetts Body of Liberties, arts. 92, 93 (1641).

remained limited to the clause prohibiting unnecessary torture, suffering, or cruelty.  St. 1972, c. 46.

In Russo, the defendant was charged under the clause of G. L. c. 272, § 77, that prohibits "knowingly and willfully authoriz[ing] or permit[ting] [an animal] to be subjected to unnecessary torture, suffering or cruelty of any kind."  Russo, 494 Mass. at 357, 362-363.  As the Supreme Judicial Court explained, this clause "stands out for its inclusion of the heightened mental state of 'knowingly' and 'willfully.'"  Id. at 363.[3]  Here, the defendant was charged with a different clause of the statute, one of its "long list of 'thou shalt not' provisions that directly prohibit a defendant's harmful actions or omissions" (citation omitted).  Id. at 362.[4]  This provision applies to a person who, "having the charge or custody of an animal, either as owner or otherwise, inflicts unnecessary

_____

[3] The court proceeded to examine these terms "to determine the requisite criminal intent for this portion of the statute." Russo, 494 Mass. at 363.  It interpreted "knowingly" to mean that "the defendant consciously authorized or permitted something that the defendant was aware would subject an animal to 'unnecessary torture, suffering or cruelty of any kind,'" and it interpreted "willfully" to mean that the defendant intended "for the animal to be subjected to 'unnecessary torture, suffering or cruelty'" (citations omitted).  Id. at 364, 365.

[4] When asked at the start of trial to identify the Commonwealth's theory, the prosecutor stated that "[t]he allegations are that [the] dog . . . essentially wasn't provided food and water, and [was] left out in bad weather conditions."

cruelty upon it, or unnecessarily fails to provide it with proper food, drink, shelter, sanitary environment, or protection from the weather." G. L. c. 272, § 77. The use of the disjunctive "or" evinces the Legislature's intent that a person who unnecessarily fails to provide an animal with a listed need may be found liable, regardless of whether that person inflicted unnecessary cruelty on the animal. See Commonwealth v. Wade, 475 Mass. 54, 61 (2016).[5]

Importantly, although the provision charged here does not require the heightened mental state of "knowing" and "willful" conduct, it is still "directed at intentional conduct." Commonwealth v. Trefry, 89 Mass. App. Ct. 568, 573 (2016). See id. at 573-574 (distinguishing misdemeanor offense for improper chaining, tethering, and confinement of dogs under G. L. c. 140, § 174E [f], for which "no mental state is explicitly required"). Specifically, the Commonwealth must prove that the defendant

_____

[5] Even though the Legislature added the language prohibiting the infliction of "unnecessary cruelty" to this clause in 1972, there is no indication that by doing so it intended to limit the scope of the preexisting prohibition against the unnecessary failure of owners and custodians to provide animals with the listed basic needs. See G. L. c. 272, § 77; St. 1972, c. 46. See also Commonwealth v. Curry, 150 Mass. 509, 512 (1890) (where statute prohibited both "unnecessarily failing to provide . . . proper food, drink, and protection from the weather" and "the infliction of unnecessary cruelty upon an animal," it "cannot be held as matter of law that the two clauses mean the same thing, or that the meaning of one clause is to be determined by the meaning of the other").

"intentionally failed to provide" the animal with one of the listed needs. See Commonwealth v. Erickson, 74 Mass. App. Ct. 172, 177 (2009), cert. denied, 558 U.S. 1153 (2010). That requires proof that the defendant acted "voluntarily and deliberately," not accidentally, and "intended the act to occur which constitutes the offense" (citation omitted). Id.

Accordingly, the judge properly instructed the jury that the Commonwealth did not have to prove beyond a reasonable doubt that "the defendant knew she was violating the statute, or that she specifically intended the harm that it forbids" but, rather, that she intentionally did acts that violated the statute.[6]

---

[6] The judge instructed the jury that "the Commonwealth must prove beyond a reasonable doubt that the defendant intentionally and knowingly did acts that were plainly of a nature as would violate the statute" (emphasis added). See Criminal Model Jury Instructions for Use in the District Court, Instruction 7.270 (cruelty to animals) (2017). The model instruction's language reflects the intent requirement applicable to offenses that involve "the direct infliction of pain on an animal" but the "knowing and willfully" standard is not statutorily required. See id. See also Commonwealth v. Szewczyk, 89 Mass. App. Ct. 711, 716 (2016); Commonwealth v. Zalesky, 74 Mass. App. Ct. 908, 909 (2009); Erickson, 74 Mass. App. Ct. at 177, quoting Commonwealth v. Magoon, 172 Mass. 214, 216 (1898) ("in circumstances involving the direct infliction of pain on an animal all that must be proved is that the defendant 'intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain'"). Even though "knowingly" is not part of the intent requirement for the offense charged here, Erickson, supra, the defendant was not prejudiced by an instruction that provided "more protection than the law afforded [her]," Commonwealth v. Simpson, 434 Mass. 570, 589-590 (2001).

3. Sufficiency of the evidence. The defendant also contends that there was insufficient evidence to support her conviction under G. L. c. 272, § 77. We conclude that the Commonwealth did not meet its burden of proving that the defendant unnecessarily failed to provide Kayla with proper shelter and protection from the weather, but the evidence did establish beyond a reasonable doubt that the defendant unnecessarily failed to provide her with proper food and drink.[7]

In reviewing the denial of a motion for a required finding of not guilty, "we assess the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt." Commonwealth v. Robinson, 493 Mass. 303, 307 (2024), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). "A conviction may rest exclusively on circumstantial evidence, and, in evaluating that evidence, we draw all reasonable inferences in favor of the Commonwealth" (citation omitted). Commonwealth v. Bonner, 489 Mass. 268, 275 (2022). "The relevant question is whether the evidence would

---

[7] The defendant does not argue that a specific unanimity instruction was required. See Commonwealth v. Palermo, 482 Mass. 620, 629-631 (2019). Nor does the defendant argue that the Commonwealth had to prove the deprivation of each listed need in order to sustain the conviction. See Commonwealth v. Inoa, 97 Mass. App. Ct. 262, 263-265 (2020).

permit a jury to find guilt, not whether the evidence requires such a finding." Commonwealth v. Brown, 401 Mass. 745, 747 (1988). "Because the defendant moved for a required finding of not guilty at the close of the Commonwealth's case, we review the sufficiency of only the evidence presented at the time the Commonwealth rested after its case-in-chief . . . ." Commonwealth v. Carrillo, 483 Mass. 269, 271-272 (2019).

As discussed, the Commonwealth prosecuted the defendant under the theory that, "having the charge or custody" of Kayla, "either as owner or otherwise," the defendant unnecessarily failed to provide Kayla with proper food, drink, or shelter. G. L. c. 272, § 77. At the outset, we are unpersuaded by the defendant's contention that, because she was not home when the animal control officers found Kayla in distress and transported her to the animal hospital, the defendant did not have "charge or custody" of Kayla. There was sufficient evidence to find that the defendant was Kayla's custodian at that time, including her earlier statement to the officer that she was Kayla's owner and "taking care" of her.

We interpret the applicable clause in G. L. c. 272, § 77, to require proof beyond a reasonable doubt that the defendant unnecessarily deprived the dog of either proper food, proper drink, or proper shelter. See Commonwealth v. Martin, 304 Mass. 320, 322 (1939) ("Where [a] statute disjunctively prescribes

several acts in a series of acts, all of which are alleged in the complaint, then the Commonwealth may prove the violation of the statute by proof of the performance by the defendant of any one of the said acts").  We also construe "unnecessarily" and "proper" in their ordinary sense to require proof that, even though the defendant could have provided food, drink, or shelter as required to keep the animal in reasonably good health, she failed to do so.  See Commonwealth v. Spaulding, 495 Mass. 300, 306 (2025), quoting Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977) (in absence of statutory definitions, we "give [words] their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose"); Curry, 150 Mass. at 512 (words used in predecessor statute "are common English words, and it must be taken that they are used in their ordinary signification").  This construction is consistent with how other States have construed comparable prohibitions in their animal cruelty laws.  See, e.g., Tuck v. United States, 467 A.2d 727, 732 (D.C. 1983) (construing "unnecessarily" and "proper" in their ordinary sense to mean that "a person, although he could provide food, drink or shelter as required to sustain the animals in reasonably good health, failed to do so"); State v. Persons, 114 Vt. 435, 437 (1946) (same).

So construed, this clause in G. L. c. 272, § 77, does not envision unbounded criminal liability for, for example, every

failure to provide a pet its ordinary feeding.  The term "unnecessarily" contemplates that at least some failures to provide animals with basic needs may be reasonable in the circumstances, and thus not prohibited by the statute.  Further, not all deprivations of basic needs will amount to a failure to provide what is required to keep an animal in reasonably good health, as the term "proper" requires.  It is true that the clause does not require proof that the defendant's failure caused the animal harm or even a risk of harm.  Erickson, 74 Mass. App. Ct. at 178.  See Curry, 150 Mass. at 512 (predecessor statute did not require proof that "the failure to provide proper food, drink, and protection must be such that on account of it the animal has cruelly suffered").  Nevertheless, the likelihood that a deprivation of a basic need will undermine an animal's health is relevant to determining whether that deprivation is sufficiently serious to establish liability under the clause.  See Curry, supra (leaving horse harnessed to carriage in woods for twenty-four hours without food and drink is "evidence of a failure to provide the horse with proper food and drink" since that "treatment has some tendency to injure a horse").  Finally, as discussed supra, the Commonwealth must also prove that the defendant acted intentionally in the failure to provide the animal with a basic need.  Erickson, 74 Mass. App. Ct. at 177.

Here, even when viewed in the light most favorable to the Commonwealth, Latimore, 378 Mass. at 677, the evidence did not prove beyond a reasonable doubt that the defendant unnecessarily failed to provide Kayla with proper shelter. While the animal control officer testified that there had been "issues with proper shelter in bad weather" during her visits, it is undisputed that the defendant obtained a doggy igloo after the officer raised that issue. Absent other evidence, the defendant's reasonable response to the officer's expression of concern precludes a finding that she deprived Kayla of "proper" shelter, or that she acted with the general intent required under the statute. While the Commonwealth argues that the jury could infer that Kayla was denied proper shelter because, according to the animal hospital records, she was found with hair loss and mud, dirt, and "unidentifiable ectoparasites" in her coat, that inference "cannot bear the weight of proof beyond a reasonable doubt" where there was no evidence that Kayla was unable to use the doggy igloo. See Commonwealth v. Lee, 460 Mass. 64, 71 (2011), quoting Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010).[8] In particular, the Commonwealth could

_____

[8] The defendant testified that Kayla, being part-coyote, did not want to be in either the doggy igloo or the house. At oral argument, the Commonwealth contended that an owner has the responsibility to bring a dog inside the house if the dog declines to use the outdoor shelter made available to her. That might be true in some circumstances, although the statute that

not meet its burden of proof in the absence of expert testimony as to what, if anything, the unidentifiable ectoparasites in Kayla's coat had to do with her being deprived of shelter. See Commonwealth v. Corey, 493 Mass. 674, 688 (2024), citing Commonwealth v. Scott, 464 Mass. 355, 364 & n.9 (2013) ("expert testimony is needed where an issue is outside the general knowledge and experience of the jury").

By contrast, there was sufficient evidence to prove that the defendant unnecessarily failed to provide Kayla with proper food and drink. As to water, one of the defendant's neighbors testified that he mowed the lawn at the defendant's property for an hour at a time on multiple occasions, and each time he saw Kayla outside the house without any food or water. He could also see the defendant's yard from his house and had observed Kayla outside "all day long" and "never saw anything down for the dog." On June 11, 2020, both neighbors saw the dog lying on the porch without any food or water, even though it was a warm day. The animal control officer testified that she observed a "lack of food" during her earlier welfare checks at the house

---

governs the chaining, tethering, and confinement of dogs provides that they may be confined in a securely enclosed yard if they have, among other things, "access" to "appropriate dog shelter." See G. L. c. 140, § 174E (c), (d). Here, the evidence was insufficient to show that the defendant intentionally deprived Kayla of proper shelter after getting the doggy igloo for her.

and described the dog on June 11 as "emaciated" and "a lot of bones." The medical records described the dog as having moderate to severe dehydration at the animal hospital before she was euthanized.

The defendant contends that the evidence was insufficient because it "not only failed to establish that [she] intended for Kayla to suffer unnecessarily but actually supported the opposite: [she] did not want this dog to suffer at the end of her life." The defendant refers to her own testimony that Kayla had stopped eating and drinking a week before June 11, 2020, and that she had sought to get Kayla euthanized. As discussed, however, the pertinent clause of G. L. c. 272, § 77, does not require the Commonwealth to prove that the defendant's conduct caused the animal harm but, rather, that the defendant unnecessarily failed to provide the animal with proper food or drink. Erickson, 74 Mass. App. Ct. at 178. Here, the jury could have reasonably concluded that the defendant unnecessarily left Kayla outside without food or water for substantial periods of time on numerous days. They could have also reasonably concluded that the defendant acted intentionally in doing so, and that her conduct amounted to a failure to provide food and drink required to keep Kayla in reasonably good health. See Commonwealth v. Gomez, 495 Mass. 688, 693 (2025) (under Latimore standard, inferences "need only be reasonable and possible and

need not be necessary or inescapable" [quotation and citation omitted]).

Judgment affirmed.